POSTMA *v.* INTERNATIONAL BROTHERHOOD OF TEAM-
STERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS
OF AMERICA, LOCAL UNION NO. 406.

1. LABOR—INJUNCTION—PICKETING—LABOR DISPUTE—LABOR OBJEC-
TIVE.
The propriety of a decree enjoining defendant union from
picketing plaintiff's place of business must be tested by a
determination of whether there was a lawful labor dispute
and whether the union sought to achieve a lawful labor
objective (CL 1948, § 423.17, as amended by PA 1949, No
230).

2. SAME—PICKETING—ECONOMIC INTERESTS OF OTHER EMPLOYEES
IN SAME INDUSTRY.
It is not necessary that a dispute exist between an employer
and his employees in order to permit peaceful picketing, be-
cause if the economic interests of other employees engaged
in the same industry are affected, they may through their
representatives publicize their grievances by peaceful pick-
eting.

3. SAME—MOTIVE FOR PICKETING—QUESTION OF FACT.
The motive for picketing by a union is always a question of
fact.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–7] 31 Am Jur, Labor §§ 223 *et seq.*, 335 *et seq.*
[1–7] Legality of, and injuction against, peaceful picketing to force
employees to join union or to compel employer to enter into
a contract which would in effect compel them to do so, in the
absence of a dispute between employer and employees as to
terms or conditions.   11 ALR2d 1338.
Practical termination, or inability to attain object of labor dis-
pute, as affecting right to enjoin picketing.   122 ALR 1292.
Injunction against peaceable picketing by labor union, plant
whose employees are represented by another union as statu-
tory bargaining agent.   166 ALR 185.
Employer's right to injunction against picketing by labor union
to enforce a demand compliance with which would constitute
an unfair labor practice.   162 ALR 1438.

4. Same—Motive for Picketing—Evidence.

Evidence that was stricken in suit to enjoin picketing of plaintiff's place of business is considered on appeal, where it appears in the record and relates to purpose and motives for establishing picket line.

5. Same—Motive for Picketing—Evidence—Forcing Plaintiff's Employees to Join Union.

Publicizing of unfair wages and working conditions at plaintiff's place of business by defendant union *held,* not established as the primary purpose of picket line, where the unfair wages and working conditions were not established to any degree of certainty and the union's officer stated, in effect, that the purpose of the picketing was to force plaintiff's employees to join the union (CL 1948, § 423.17, as amended by PA 1949, No 230).

6. Same—Labor Objective—Forcing Employees to Join Union.

An attempt to force employees to become unionized either directly or indirectly through their employer is not a lawful labor objective (CL 1948, § 423.17, as amended by PA 1949, No 230).

7. Injunction—Picketing—Constitutional Law—Forcing Plaintiff's Employees to Join Defendant Union.

A permanent injunction against picketing place of business where plaintiff conducted sand and gravel business did not violate any of the constitutional rights of defendant union or its members, where there was no dispute between plaintiff and his employees, union does not represent his employees although it does represent employees of other companies in the same business in the area and purpose of picketing was to force plaintiff's employees to join defendant union (CL 1948, § 423.17, as amended by PA 1949, No 230).

Appeal from Kent; Brown (William B.), J. Submitted June 5, 1952. (Docket No. 29, Calendar No. 45,423.) Decided September 3, 1952. Application for certiorari filed in the Supreme Court of the United States November 13, 1952.

Bill by Harold F. Postma, doing business as Harold F. Postma Gravel Company, and another against International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 406 and others to restrain picketing.

Clarence De Boer and others intervened as parties plaintiff. Decree for plaintiffs. Defendants appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiffs.

*Schmidt, Smith & Howlett,* for intervening plaintiffs.

*David Previant, A. Robert Kleiner* and *George Fitzgerald,* for defendants.

BUSHNELL, J.   Plaintiff Harold F. Postma, who is in the sand and gravel business in the Grand Rapids area, filed a bill of complaint in which he sought a permanent injunction restraining defendants from picketing his place of business. The intervening plaintiffs are the employees of Postma.

Defendant Union, Local No. 406, is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America of the American Federation of Labor. The individual defendants are Mackey, an officer, and Dertien and Switzer, members of the local. The Union does not represent any of the Postma employees, although it has attempted to persuade them to become its members. It does, however, represent employees of other sand and gravel companies in the area.

In February of 1950, the Union had difficulty in negotiating new agreements with the Grand Rapids Gravel Company and other competitors of Postma. According to testimony, which was returned on a separate record, the negotiating companies stated that their reason for failing to reach an agreement with the Union was that they were unable to increase or even continue their prevailing wages because Postma was paying lower wages. The Union

offered in corroboration of this statement a pay stub of 1 of Postma's employees showing wages of 82 cents per hour covering a period of 1 week in 1949, but without any indication of the nature of the employee's work. Intervening plaintiffs testified that they were paid wages by Postma ranging from $1.45 to $1.65 per hour, and 1 of them testified that he was never paid less than $1 per hour even when he was first employed. The Union stated in its answer that the general wage rate in the area for similar work was $1.31 per hour.

During negotiations with the Union the manager of the Grand Rapids Gravel Company called a meeting of all gravel producers in the area, which Postma attended. Kleiner, an attorney for the Union, was also present. Postma testified that Kleiner urged all the gravel companies to sign a blanket contract designating the Union as the bargaining agent for all employees. Postma admitted on cross-examination that Kleiner did not offer a contract to be signed at that time, and that the testimony regarding the contract was based upon a discussion which took place at the meeting after Kleiner had left the room.

During the progress of the negotiations the employees of certain competing gravel producers requested their Union officers to picket the Postma Company. Defendant Mackey, the secretary-treasurer of defendant Union, testified that the purpose of such a picket line was:

"To let the general public know that we had a dispute; Postma Gravel Company was unfair, paying a lesser wage in the gravel industry, hoping that we would encourage people that were favorable of the Union operators to place their orders to a fair operator that was paying the higher standards of wages and working conditions that exist in this area."

This testimony was stricken as immaterial. However, it was printed in full in the record, together with a lengthy colloquy between court and counsel.

A picket line was established on August 3, 1950, and continued until August 8th, when Postma obtained a temporary restraining order. This picket line consisted of 2 men who walked either abreast or single file on the shoulder of the highway in front of the Postma property. They carried placards reading: "This company unfair to organized labor." Mackey testified that the word "company" was intended to include the employees of Postma as well as the company, and not to mean that Postma was unfair to his own employees. The Union offered to change the wording of the sign if it was deemed inaccurate.

The trucks of Postma use the shoulder of the highway in going from one part of Postma's premises to another. It was claimed that the pickets hindered the ingress and egress of the trucks and required them to slow down. After the first day the pickets sat in automobiles on which were displayed like signs, near the entrance to the Postma yard.

Postma uses bulk cement delivered to him by truck and which is purchased from various companies located in other parts of the State. The cement truck drivers are not Postma's employees; most of them are Union members and will not cross a picket line. When the Postma picket line was established, Local No. 406 notified other teamsters locals with whom the cement haulers had agreements, so they might avoid the expense of returning undelivered bulk cement. Cement is delivered to Postma by 5 separate trucking concerns. Postma testified that failure to receive bulk cement would paralyze his business. In September several gravel producers in the Grand Rapids area agreed to a

wage increase, provided Postma and other competitors would pay the same rate.

Prior to the entry of a decree in which the defendants were permanently enjoined from picketing, the court said:

"Considering all the testimony in the case, the court is of the opinion that no labor dispute existed at the Postma plant; that there was no legitimate labor dispute objective in the establishing of the picket line at plaintiff's place of business; that the defendants were seeking to accomplish an improper and illegal labor objective in picketing plaintiff company's premises, and in cutting off its supply of cement. Plaintiffs are, therefore, entitled to the relief prayed in their bills of complaint."

Defendants on appeal argue that the decree is a violation of their rights under the Thirteenth and Fourteenth Amendments of the Constitution of the United States; that it imposes involuntary servitude upon them, deprives them of freedom of speech and of property without due process of law. The propriety of this decree must be tested by a determination of whether there was a lawful labor dispute and whether the Union sought to achieve a lawful labor objective.

It is conceded that no dispute exists between Postma and his employees, but, rather, the dispute is between the Union and Postma and the Union and Postma's employees.

It is not necessary that a dispute exist between an employer and his employees in order to permit peaceful picketing, because if the economic interests of other employees engaged in the same industry are affected, they may through their representatives publicize their grievances by peaceful picketing. *Silkworth* v. *Local No. 575 of the American Federation of Labor,* 309 Mich 746, 755; *Standard Grocer*

*Co.* v. *Local No. 406 of the American Federation of Labor,* 321 Mich 276, 285; and authorities cited therein.

What was the objective of the defendants? The motive for picketing is always a question of fact, and here an exceedingly close one. We have, therefore, considered that excluded evidence returned in the separate record, which we deem relevant in order to determine the purpose and motives of the defendant Union and its officers. The Union claims:

"The picket line was to be placed to show the general public and like that through our method of advertising to the general public that there was an unfair condition, an unfair condition with Postma Gravel Company because they were paying beneath the rates at that time; * * * they [the employees of Postma company] were holding us back."

This claim is supported by the testimony of defendant Mackey and the pay stub of one of Postma's employees, as well as the contracts finally negotiated between the Union and Postma's competitors.

"This objective, *viz.,* the bettering of the working conditions and wages of nonunion members in the industry, so as to remove the barrier to increased benefits to union members, we must deem to be a lawful labor objective, if not otherwise prohibited by law." *Standard Grocer Co.* v. *Local No. 406 of the American Federation of Labor, supra,* 289.

Postma contends, however, that defendants' claim is a mere sham and that they were attempting to force his employees to join the Union and force him to enter into a contract giving it sole bargaining rights.

There is little in the testimony to indicate that a publicizing of unfair wages and working conditions at Postma company was the primary purpose of defendants' picketing. The existence of such "un-

fair wages and working conditions" was not established to any degree of certainty. The only evidence regarding wages was Mackey's testimony and the pay-roll stub of 1 employee. The only testimony regarding working conditions was that Postma's employees had no guarantees as to the terms of their employment.

Even if such facts were proved, Mackey's answers to the following questions indicate a different objective. He was asked:

"Mr. Mackey, even if all of the employees at the Postma Sand and Gravel Company were getting at least or more than the uniform wage scale you have negotiated with the other 2 gravel companies, but if they still were not members of your Union would you consider your Union to be in dispute with those employees?"

He replied: "Yes, sir."

Mackey was asked on cross-examination:

"It is your contention that the only way that this dispute can ever be removed between your Union and Postma employees is for them to join your Union, is that right?"

He replied:

"I believe that they should join our Union; that they have been getting the benefits that we have negotiated, so why shouldn't they join our Union."

According to Mackey, it would make no difference whether Postma paid as much or more than the uniform wage scale, because he stated that the only way to settle the dispute would be for Postma's employees to join the Union. Defendants' objective, therefore, was to force Postma's employees to become members of the Union.

In *Harper* v. *Brennan,* 311 Mich 489, and *Standard Grocer Co.* v. *Local No. 406 of the American Fed-*

*eration of Labor, supra,* the Court held (the writer of this opinion dissenting) that, under the provisions of the statute (CL 1948, § 423.17, as amended by PA 1949, No 230 [Stat Ann 1950 Rev § 17.454 (18)]) an attempt to force employees to become unionized either directly or indirectly through their employer is not a lawful labor objective.   Under the authorities cited, we are obliged to hold that the permanent injunction entered by the circuit court does not violate any of the constitutional rights of the defendants.

The decree is affirmed, with costs to appellees.

DETHMERS, BUTZEL, CARR, SHARPE, and REID, JJ., concurred with BUSHNELL, J.

BOYLES, J., concurred in the result.

The late Chief Justice NORTH did not sit.