WAY BAKING COMPANY *v.* TEAMSTERS & TRUCK DRIVERS LOCAL NO. 164, AMERICAN FEDERATION OF LABOR.

1. LABOR—PICKETING—UNLAWFUL LABOR OBJECTIVE—COERCION ON EMPLOYEES.

Finding of trial court that defendant union's picketing of plaintiff bakery's place of business and stores handling its products to bring about such a loss of commissions on the part of plaintiff's driver salesmen as to compel plaintiff to insist that such employees join the union and to force the employees to do so for their own protection, a labor objective declared unlawful by Federal and State statutes, *held,* supported by testimony (61 Stat 135; CL 1948, § 423.17, as amended by PA 1949, No 230).

2. SAME—PEACEFUL PICKETING.

Peaceful picketing may not be used for effecting an unlawful labor objective.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 31 Am Jur, Labor §§ 224, 230, 257 *et seq.*

[1–6] Lawful or proper labor purpose as condition of right of peaceful picketing. 174 ALR 593.

Conduct of employees or labor union as unfair labor practice within labor relations acts. 149 ALR 464.

Legality of, and injunction against, peaceful picketing to force employees to join union or to compel employer to enter into a contract which would in effect compel them to do so, in the absence of a dispute between employer and employees as to terms or conditions of employment. 11 ALR2d 1338.

Constitutionality and construction of provision of Labor Management Relations Act (Taft-Hartley Act) making it unfair labor practice for labor organization to engage in secondary boycott. 16 ALR2d 769.

Interference with production by concerted action of employees, short of formal strike, as affected by labor relations acts. 25 ALR2d 315.

[8, 9] 31 Am Jur, Labor §§ 144, 146, 169.

[8, 9] The Labor Management Relations (Taft-Hartley) Act, 1947, and its effect on the National Labor Relations (Wagner) Act. 173 ALR 1401.

3. SAME—LABOR OBJECTIVE—FORCING EMPLOYEES TO JOIN UNION.

An attempt to force employees to become unionized either directly or indirectly through their employer is not a lawful labor objective (CL 1948, § 423.17, as amended by PA 1949, No 230).

4. SAME—PICKETING—NATURE OF OBJECTIVE AN ISSUE OF FACT.

Whether picketing is undertaken to accomplish a lawful objective or an unlawful one is an issue of fact.

5. SAME—PICKETING—FREE SPEECH—UNLAWFUL LABOR OBJECTIVE.

The constitutional right of free speech does not deprive a State of the power to make it unlawful for a labor union to pursue an unlawful labor objective by peaceful picketing.

6. SAME—SECONDARY BOYCOTT—FINDING OF COURT—EVIDENCE.

Finding of trial court that attempt by defendant union to induce stores, hotels and restaurants to refrain from purchasing plaintiff bakery's products constituted a secondary boycott *held*, fully supported by evidence in suit to restrain unlawful interference with the conduct of plaintiff's business by picketing or threats to do so (61 Stat 136; CL 1948, § 423.17, as amended by PA 1949, No 230).

7. SAME—INTRASTATE BAKERY—INTERSTATE COMMERCE.

Finding as a matter of fact that plaintiff's bakery business was conducted in such a way that defendant union's picketing activities with respect thereto did not affect interstate commerce *held*, supported by evidence, where it appears that its chief raw materials were conveyed by truck from railroad warehouses in this State and that its products were sold only intrastate; the fact that some products were sold to factories producing goods sold in interstate commerce being insufficient to establish that defendant union's picketing activities interfered with interstate commerce.

8. COURTS—JURISDICTION—PICKETING—SECONDARY BOYCOTT.

The labor management relations act of 1947 was not intended to deprive State courts of all jurisdiction in cases involving picketing and secondary boycott for attainment of an unlawful labor objective (61 Stat 136).

9. LABOR—STATUTES—NATIONAL LABOR RELATIONS BOARD—COURTS—PICKETING—SECONDARY BOYCOTT—JURISDICTION.

The national labor relations act, as amended by the labor management relations act of 1947, need not be construed as vesting sole and exclusive jurisdiction in the national labor relations board so as to preclude a State court from exer-

cising jurisdiction in suits to enjoin picketing and secondary boycott for attainment of an unlawful labor objective (29 USCA, Supp, § 141 *et seq.*).

10. Injunction — Picketing — Secondary Boycott — Rehearing — Discretion of Court.
   Trial judge did not abuse his discretion in denying defendants' motion for a rehearing to allow them to supplement their proofs in suit to enjoin picketing and secondary boycott of plaintiff bakery, engaged solely in intrastate activities.

Appeal from Jackson; Boardman (Harry D.), J. Submitted December 4, 1952. (Docket No. 3, Calendar No. 45,469.) Decided January 5, 1953. Certiorari denied by Supreme Court of the United States May 18, 1953.

Bill by Way Baking Company, a Michigan corporation, against Teamsters & Truck Drivers Local No. 164, American Federation of Labor, and others to restrain unlawful picketing. Decree for plaintiff. Defendants appeal. Affirmed.

*McKone, Badgley, Kendall & Domke,* for plaintiff.

*David Previant, Alvin Dahlem* and *George Fitzgerald,* for defendants.

Carr, J. Plaintiff has for many years conducted a wholesale baking business in the city of Jackson. Its products are sold under the name of "Kleen Maid" to grocery stores, restaurants and cafeterias, in Jackson county and contiguous counties within this State. Sales and deliveries are made by employees referred to in the record as "driver salesmen." Plaintiff's plant is without railroad facilities, and materials used by it are delivered by truck. Its employees are not members of any union.

Approximately 5 years before the events leading directly to the present suit the defendant labor union through its representatives sought to persuade plaintiff's salemen to become members. Such efforts were

without success. Subsequent efforts met with a like result. Shortly prior to bringing suit plaintiff undertook to enlarge its facilities, and entered into contracts to that end. Practically all of the employees participating in the building enterprise were members of labor unions, and many of the truck drivers hauling material for use in the operation were members of defendant union. Following an election of officers in December, 1949, defendants proceeded to picket plaintiff's plant and also a number of grocery stores and restaurants in Jackson handling plaintiff's products. Signs were displayed by those engaged in picketing, advertising the fact that employees of plaintiff were not members of defendant union. Such signs, displayed at or near the stores referred to, urged custmors not to purchase Kleen-Maid bread. Patrons of restaurants picketed were asked to request that they be furnished bread delivered by union drivers. Before establishing picket lines representatives of the union contacted the proprietors of such stores and restaurants for the purpose, as the record indicates, of persuading them not to handle plaintiff's products. Such requests were rejected, and the picketing followed.

The bill of complaint filed by plaintiff named as defendants therein the union, 2 of its officers, Sheldon V. Manning and Emmett Green, and an alleged business agent of the union, Earl Penn, together with all other officers and members. It alleged that defendants were unlawfully interfering with the conduct of its business to its serious injury, that there was no labor dispute between the plaintiff and any of its employees or between plaintiff and the defendants, and that the conduct of the defendants of which complaint was made had for its purpose coercing the plaintiff to require its employees to join the union and to coerce said employees to do so for the protection of their personal interests. It was further al-

leged that defendants' conduct in picketing stores and restaurants handling plaintiff's products amounted to a secondary boycott directed toward the accomplishment of the unlawful purpose alleged by plaintiff. Plaintiff asserted that under the situation existing it was without adequate remedy other than equitable relief by way of injunction.

Defendants by answer denied any unlawful labor objective on their part, asserting in substance that the picketing operations were an exercise of the right of free speech, conceding, however, that such activities were carried on "for the purpose of persuading the public to refuse to purchase" plaintiff's products. They also averred that the conditions under which plaintiff's products were sold and distributed were of such character as to jeopardize wages, hours and working conditions, established by contracts entered into for the benefit and protection of members of the union. The pleading failed to specify the objectionable features to which reference was intended. Defendants further pleaded that plaintiff's business is of such nature as to affect interstate commerce, that the matters referred to in the bill of complaint are governed by the national labor relations act as amended by the Taft-Hartley act of 1947, and that the State court was without jurisdiction in the premises because said act invested in the national labor relations board exclusive jurisdiction over the subject matter of plaintiff's complaint. Plaintiff filed reply denying the material affirmative allegations of the answer.

Following a trial of the issues presented by the pleadings the trial judge came to the conclusion that plaintiff was entitled to the relief sought. His opinion filed in the case indicates that he carefully considered the testimony before him and the legal issues urged by the respective parties. It was his conclusion that the purpose of defendants' conduct was not

a lawful labor objective, that defendants sought by coercion and intimidation to induce plaintiff's driver salesmen to join the union, that the controversy was one over which the State court had jurisdiction, and that the constitutional right of free speech, on which defendants relied, did not permit the employment of coercive tactics in the attempt to accomplish the purpose disclosed by the proofs. A decree was entered accordingly, enjoining the defendants from picketing plaintiff's plant and the places of business of its customers for the purpose of forcing or attempting to force plaintiff's employees to become members of a labor organization, or forcing plaintiff to compel such action on the part of its employees. Further provisions of the decree were in accord with the principal relief granted. A subsequent motion by defendants to grant a rehearing for the purpose, among others, of permitting defendants to supplement the record was denied. Defendants have appealed from the decree entered and also from the order denying the rehearing.

On the trial of the case all of plaintiff's driver salesmen, with the exception of one who was not available, testified in substance that they did not desire to join the union, and that they were satisfied with the conditions of their employment. The proofs established that they were paid a fixed sum per week together with a commission of 8 1/2% on sales. The conclusion is fully supported by testimony that the compensation paid by plaintiff to its driver salesmen, and the general conditions of employment existing, compared favorably with those of the members of defendant union engaged in like work for plaintiff's competitors.

In support of the claim that defendants' purpose was not a lawful labor objective plaintiff relies in part on the testimony of defendants Green and Manning. The former, after testifying that he was

secretary-treasurer of the defendant union, and that he was personally active in the picketing operations, testified as follows:

"*Q*. What did you expect to accomplish by these picket lines? What was the objective?

"*A*. We thought that by having the picket line the public wouldn't buy as much of the bread as there had been, thinking maybe that would induce the members of the Way Baking Company to join our union and be along with our boys that was working on a different wage scale than they was. * * *

"*Q*. In other words, is that what you are saying? That because these drivers would not be able to sell as much bread that they would be obliged to join your union so that these customers would take Way's bread?

"*A*. We felt that they would—it would be an inducement for them to join our union.

"*Q*. You thought that they would be induced, when their sales fell off, to get into your union. Is that it?

"*A*. Right. * * *

"*Q*. And you knew, of course, that their pay depended upon the amount of sale that they made?

"*A*. Yes, sir.

"*Q*. So that your idea was that by depriving them of part of their pay you would compel them to join your union. Is that it?

"*A*. We thought that would induce them to join our union."

Defendant Manning, president of the union, testified at some length with reference to the attempts made to persuade the managers of certain stores and restaurants to cease handling plaintiff's products, particularly the bread. The following excerpts from his testimony are significant as bearing on the object sought to be accomplished:

"*Q*. You said that you would picket their store—or advertising, if you want to put it that way—unless they threw out Way's bread, didn't you?

"*A.* Didn't say nothing about throwing out. Just asked them if they would go along with us.

"*Q.* What did you mean by 'go along'?

"*A.* Well, throw it out. * * *

"*Q.* You made it clear to them, didn't you, that if they would throw Way's bread out you would not set up a picket line? Didn't you?

"*A.* If they throwed Kleen Maid, I wouldn't put up a picket line? That's right.

"*Q.* That is right. So the test of whether or not a picket line was set up in front of any particular store was whether they threw it out of their store?

"*A.* I told them I was going to advertise that Kleen Maid was unorganized."

We think the testimony in the case clearly supports the claim of the plaintiff, and the finding of the trial judge, that the defendants were undertaking by their picketing activities to so injure the business of plaintiff, and to bring about such a loss of commissions on the part of plaintiff's driver salesmen, as to compel plaintiff to insist that said employees join the union, and likewise to force said employees to do so for their own protection. That such a purpose may not be regarded generally as a lawful labor objective is clearly indicated by the language of the State statute, as well as by the labor management relations act of 1947,* commonly referred to as the Taft-Hartley act.

CL 1948, § 423.17, as amended by PA 1949, No 230 (Stat Ann 1950 Rev § 17.454 [18]), effective May 31, 1949, reads as follows:

"It shall be unlawful (1) for any employee or other person by force or unlawful threats to force, or attempt to force any person to become or remain a member of a labor organization, or (2) for an employee or other person by force or unlawful threats to force or attempt to force any person to refrain

---

* 61 Stat 136 (29 USCA Supp, § 141 *et seq.*).

from engaging in employment. Violations of this section shall be a misdemeanor and punishable as such."

Section 7 of the Federal statute (61 Stat 140, 29 USCA, Supp, § 157) provides:

·"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

The following section of the labor management relations act of 1947 provided, in subdivision 8(a) as it read at the time of the happening of the events out of which this case arises, as follows:

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;"

And subdivision (b) of the same section stated in part that:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce  *  *  *  employees in the exercise of the rights guaranteed in section 7."

The quoted provisions of the State statute, as well as of the Federal law, are clear. Obviously they are directed at practices of the character involved in the instant case. No claim is made that there is any conflict between the State statute and the act of congress.

This Court has heretofore considered several cases involving the matter of picketing to accomplish an unlawful objective. In *Silkworth* v. *Local No. 575 of the American Federation of Labor,* 309 Mich 746, the defendants sought to procure plaintiffs' employees to join the union. To that end picketing was instituted to compel plaintiffs to pay the initiation fees for their drivers, thus putting the employees in the union. It was held that the purpose sought to be achieved was not a lawful labor objective, and that "defendants could not use the lawful means of peaceful picketing to accomplish such unlawful purpose." A like conclusion was reached in *Harper* v. *Brennan,* 311 Mich 489.

The case of *Standard Grocer Co.* v. *Local No. 406 of the American Federation of Labor,* 321 Mich 276, presented a factual situation closely analogous to that in the case at bar. The Court recognized the rule, announced in prior decisions, that the determination of the purpose or object of picketing is one of fact. The testimony established that the defendant union, by picketing plaintiff's wholesale grocery warehouse, sought to compel it to force its employees to join the union. Prior decisions involving the question at issue or others of related import were considered at length and the conclusion was reached that under such decisions and in accordance with pertinent provisions of both State and Federal statutes the objective sought was not a lawful one and that plaintiff was entitled to injunctive relief. Likewise in *Postma* v. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 406,* 334 Mich 347, it was held, after discussing prior decisions, that (syllabus 6):

"An attempt to force employees to become unionized either directly or indirectly through their em-

ployer is not a lawful labor objective (CL 1948, § 423.17, as amended by PA 1949, No 230)."

To repeat the discussions set forth in the opinions in the foregoing cases would serve no useful purpose. As has been repeatedly recognized, whether picketing is undertaken to accomplish a lawful objective or an unlawful one is an issue of fact. Under the record in the case at bar the conclusion cannot be avoided that defendants were motivated by an improper purpose. The objective sought to be obtained was not a lawful one. We are in accord with the conclusion of the trial judge.

In support of their contentions defendants cite and rely on *Senn v. Tile Layers Protective Union,* 301 US 468 (57 S Ct 857, 81 L ed 1229). It was there held that a statute of the State of Wisconsin, in effect making it lawful for a labor union to picket for the purpose of unionizing a shop although none of the employees were union members, did not violate the due process of law clause of the Fourteenth Amendment to the Federal Constitution. No suggestion was made in the case that State legislative action directed against picketing for the purpose of forcing unwilling employees to join a union would be invalid.

In *American Federation of Labor v. Swing,* 312 US 321 (61 S Ct 568, 85 L ed 855), also cited by defendants, the question at issue was whether the common-law policy of the State, limiting peaceful picketing to cases in which the controversy was between the employer and his own employees, was in contravention of the constitutional guaranty of freedom of speech. The issue was determined affirmatively, and the decree of the State court from which an appeal had been taken was reversed. The case was decided several years prior to the enactment by congress of the labor management relations act of

1947. It did not involve the question at issue in the controversy now before this Court.

In view of defendants' claim that the injunction granted by the trial court constitutes an interference with the right of free speech, the decision in *Gazzam* v. *Building Service Employees International Union, Local 262,* 29 Wash2d 488 (188 P2d 97, 11 ALR2d 1330), is of interest. It was there held that the pick-. eting of the premises of an employer by a labor union to compel such employer to make a contract with the union requiring that his employees should become members thereof, although they were unwilling to do so, was not a permissible exercise of the right of free speech, its effect being coercive, and was at variance with the policy of the State as evidenced by an act of the State legislature. In the annotation in ALR2d following the case it is said, after reference to several decisions of the United States supreme court, including the *Swing Case, supra*:

"Hence the conclusion seems justified that these decisions of the United States supreme court do not stand for the proposition that the constitutional right of free speech deprives a State of the power to make it unlawful for a labor union to pursue by peaceful picketing the purposes actually involved in these cases.

"The correctness of this conclusion is supported by the decisions of the United States supreme court in *Carpenters & Joiners Union of America, Local No. 213,* v. *Ritter's Cafe* (1942), 315 US 722 (62 SCt 807, 86 L ed 1143), reh den 316 US 708 (62 S Ct 1038, 86 L ed 1775); *International Union, U. A. W. A. F. of L. Local 232* v. *Wisconsin Employment Relations Board* (1949), 336 US 245 (69 S Ct 516, 93 L ed 651), reh den 336 US 970 (69 S Ct 935, 93 L ed 1121); and *Giboney* v. *Empire Storage & Ice Co.* (1949), 336 US 490 (69 S Ct 684, 93 L ed 834).

"In the *Ritter's Cafe Case* a State injunction, based upon State anti-trust laws, restraining peaceful pick-

eting of the place of business of one who entered into a contract with an employer of nonunion labor for the construction at another place of a building unconnected with such business, was sustained, where such injunction was rested on the ground that the conduct of the labor union violated the State anti-trust laws.

"In the *Giboney Case* a State injunction restraining peaceful picketing for the purpose of coercing a wholesale distributor of ice to agree to refrain from selling to nonmember peddlers was upheld, where such picketing was prohibited under a State anti-trust law, although the situation involved is nearly indistinguishable from the one involved in *Bakery & Pastry Drivers & Helpers Local of the International Brotherhood of Teamsters* v. *Wohl* (1942), 315 US 769 (62 S Ct 816, 86 L ed 1178), *supra,* the only substantial distinction being that in the *Giboney Case* the State injunction was based upon the criminal law of the State. Indeed, in the opinion of the court it was expressly stated that the constitutional freedom of speech does not extend its immunity 'to speech or writing used as an integral part of conduct in violation of a valid criminal statute.'

"In the *International Union Case* a State statute making it an unfair labor practice for an employee to instigate intermittent and unannounced work stoppages was upheld as valid, against the objection, among others, that it violated the constitutional right of free speech.

"And see, also, *Lincoln Federal Labor Union* v. *Northwestern Iron & Metal Co.* (1949), 335 US 525 (69 S Ct 251, 260, 267, 93 L ed 212, 6 ALR2d 473), and *American Federation of Labor* v. *American Sash & Door Co.* (1949), 335 US 538 (69 S Ct 258, 260, 93 L ed 222, 6 ALR2d 481), where State statutes and constitutional amendments which, in effect, prohibited closed-shop contracts were upheld as valid against the objection, among others, that they violated the right of free speech."

The decision of the State court in the *Gazzam Case, supra,* was affirmed by the United States supreme court in *Building Service Employees International Union, Local 262,* v. *Gazzam,* 339 US 532 (70 S Ct 784, 94 L ed 1045). Attention was called to the fact that the injunction was not directed against peaceful picketing generally but was based on the ground that the purpose of the union was violative of the declared public policy of the State with reference to coercion by an employer of his employees in the determination of matters affecting them and their employment. Citing prior decisions, the court considered the claim of the union that the injunction prejudiced the right of free speech protected by the First and Fourteenth Amendments to the Federal Constitution. In concluding that the claim was not well founded, it was said in part:

"This court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution. *Cafeteria Employees Union Local 302* v. *Angelos,* 320 US 293 (64 S Ct 126, 88 L ed 58) ; *Bakery & Pastry Drivers & Helpers Local of the International Brotherhood of Teamsters* v. *Wohl,* 315 US 769 (62 S Ct 816, 86 L ed 1178) ; *American Federation of Labor* v. *Swing,* 312 US 321 (61 S Ct 568, 85 L ed 855); *Carlson* v. *California,* 310 US 106 (60 S Ct 746, 84 L ed 1104) ; *Thornhill* v. *Alabama,* 310 US 88 (60 S Ct 736, 84 L ed 1093); *Senn* v. *Tile Layers Protective Union,* 301 US 468 (57 S Ct 857, 81 L ed 1229). But since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message the pickets convey, this court has not hesitated to uphold a State's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity. Thus in *Milk Wagon Drivers' Union of Chicago Local 753* v. *Meadowmoor Dairies, Inc.,* 312

US 287 (61 S Ct 552, 85 L ed 836, 132 ALR 1200), the picketing in issue, considered in isolation, was peaceful, but had been found to be enmeshed with and set in such a background of violence that it was a part of a pattern of violence. This court held that peaceful picketing under such circumstances might properly be enjoined by the State. * * *

"The public policy of Washington relied upon by the courts below to sustain this injunction is an important and widely accepted one. The broad purpose of the act from which this policy flows was to prevent unreasonable judicial interference with legitimate objectives of workers. But abuse by workers or organizations of workers of the declared public policy of such an act is no more to be condoned than violation of prohibitions against judicial interference with certain activities of workers. We therefore find no unwarranted restraint of picketing here. The injunction granted was tailored to prevent a specific violation of an important State law. The decree was limited to the wrong being perpetrated, namely, 'an abusive exercise of the right to picket.' *Cafeteria Employees Union Local 302 v. Angelos,* 320 US 293 at 295 (64 S Ct 126, 88 L ed 58)."

Appellants insist that the trial judge was in error in concluding that the attempt on the part of defendants to induce stores, hotels and restaurants to refrain from purchasing plaintiff's products constituted a secondary boycott. We think the evidence fully supports the finding. Obviously the clearly-indicated threats to establish picket lines, if the requests of the representatives of the union were ignored, were coercive. The conclusion cannot be avoided that picketing with signs of the character displayed in the instant case would have a strong tendency to discourage prospective customers from entering the picketed place of business. The purpose unquestionably was, as stated by defendant Man-

ning, to interfere with the sale and distribution of plaintiff's products, thus causing injury to plaintiff and its employees, as well as injury and damage to the business establishments that were actually picketed. With reference to such phase of the union's activities defendant Green testified, referring to conversations between representatives of the union and proprietors or managers of establishments against which pressure was exerted:

"We told them we intended to picket the bread if it kept going in there. In other words, we told them if they continued to buy Way's bread that there would be a picket line in front of their place."

Defendants insisted in their answer to the bill of complaint and on the trial of the case that the court was without jurisdiction to grant the relief sought by plaintiff. Such claim was predicated on the fact that certain of the ingredients used by plaintiff in its products were purchased without the State. It was defendants' position, and is on this appeal, that some part of plaintiff's transactions were in interstate commerce, and that sole jurisdiction to hear and determine the matters raised by the bill of complaint was vested by the labor management relations act of congress in the national labor relations board. The trial judge in his opinion rejected the argument, pointing out that when the materials received from other States came into the possession of the plaintiff to be used in the preparation of articles sold and offered for sale locally they were then in intrastate commerce, citing in support of his conclusion *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich 260; *Slaggert* v. *Case,* 319 Mich 200; *Atlantic Coast Line R. Co.* v. *Standard Oil Company of Kentucky,* 275 US 257 (48 S Ct 107, 72 L ed 270).

As before noted, plaintiff's bill of complaint alleged that it was without railroad facilities for the transportation of goods directly to its plant. It was further asserted that because of such situation it was necessary to convey flour, which it purchased for processing, from railroad yards to plaintiff's plant by trucks. Testimony of plaintiff's president discloses that flour was the principal ingredient used in plaintiff's operations, and that some purchases thereof were made in Michigan and others outside the State. It was further stated that lard, another important ingredient, was purchased from local establishments maintained by corporations operating without the State. It cannot be said from this record that any materials purchased by plaintiff without the State and transported in interstate commerce were delivered in such transportation to plaintiff's plant. That the interstate transportation as to such materials shipped by rail terminated at the warehouse of the carrier is apparent. The activities of the defendants of which the plaintiff complained did not affect transportation terminating at any point or points other than the plant itself where picketing was maintained. Whether interstate commerce was affected by such activities became, under the record in the case, an issue of fact. See *National Labor Relations Board* v. *Denver Building & Construction Trades Council,* 341 US 675 (71 S Ct 943, 95 L ed 1284). The trial judge found that interstate commerce was not so affected, and we think that such finding was fully justified by the record.

It clearly appears that plaintiff's driver salesmen, whom defendants sought to induce to join the union, were employed solely in intrastate commerce. They operated, as before noted, in the city of Jackson and surrounding territory. They did not make sales outside of Michigan. It was these employees in

intrastate commerce against whom the unlawful labor objective was primarily directed. Appellants argue that plaintiff should be regarded as carrying on interstate commerce in the sale and distribution of its products because some sales are made to factories producing goods sold in interstate commerce. Obviously the acceptance of such theory would result in the vast majority of business activities, and interferences therewith, being regarded as "affecting interstate commerce." We cannot agree that the argument is tenable.

Defendants' claim that the trial court had no jurisdiction to determine the cause of action and to grant relief to the plaintiff appears to rest principally on the argument that the national labor relations act, as amended by the Taft-Hartley act, has invested the national labor relations board with sole and exclusive jurisdiction of all controversies of the character involved in the case at bar. In support of the argument attention is called to *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Division 998* v. *Wisconsin Employment Relations Board*, 340 US 383 (71 S Ct 359, 95 L ed 364, 22 ALR2d 874). The question at issue there was the validity of a provision of a Wisconsin statute requiring labor disputes affecting public utilities to be settled by arbitration or conciliation. It was held that the statute was in conflict with the national labor relations act, as amended by the labor management relations act of 1947, and particularly with the provisions thereof safeguarding the right of employees to strike. The conclusion was indicated in the opinion of the majority of the court that the congress had occupied such field, thereby closing it to State regulation. The decision of the Wisconsin supreme court upholding the statute was reversed. Obviously the matter at issue was the validity of the State statute. The

decision may not be regarded as having the scope and effect that counsel for appellants imply.

Construing the provisions of the labor management relations act of 1947 in the light of the indicated purpose sought to be accomplished thereby, it cannot be said that the congress evidenced an intention to deprive State courts of all jurisdiction in cases involving a factual situation of the character presented in the instant controversy. Had such a result been intended, we think that it would have been declared in clear and positive language. State legislatures had, prior to 1947, adopted laws designed to obviate industrial strife and to protect and safeguard the rights of employers and employees as well as the rights of the public. State courts had repeatedly determined controversies of the nature involved in the decisions of this Court above cited. That the congress was aware of such situation is not open to question.

The trial judge, as above stated, concluded that the activities of the defendants against which plaintiff sought relief, and against which the injunction issued was directed, did not affect interstate commerce. On the record in the case the correctness of such finding is not open to question. We are not in accord with appellants' claim that the national labor relations act, as amended by the labor management relations act of 1947, must be construed as vesting sole and exclusive jurisdiction in the national labor relations board, and, hence, as precluding the State court from exercising jurisdiction, under the factual situation presented by the record. Rights of the character asserted here by plaintiff are recognized and protected by the State statute, above quoted, the purpose of which is in keeping with that of the Federal law. Said statute is penal in form, and must be regarded as a clear and unequivocal declaration of public policy. The trial court was

correct in holding that it was clothed with authority to grant the injunctive relief sought and that the facts established by the pleading and proofs required such action.

The contention advanced by appellants that the injunction issued by the trial court operates as an unwarranted interference with their right of freedom of speech under the First and Fourteenth Amendments to the Federal Constitution is fully answered by the cases above cited, particularly the decision of the United States supreme court in *Building Service Employees International Union, Local 262,* v. *Gazzam.* We further conclude that the trial judge did not abuse his discretion in denying the motion for a rehearing to allow defendants to supplement their proofs. Questions incidental to the matters above considered, raised by counsel in their briefs, do not require specific discussion.

The decree of the trial court is affirmed. Plaintiff may have costs.

DETHMERS, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with CARR, J.

ADAMS, J., concurred in the result.