**Cleveland v. Local Union No. 655, United Association of Journeymen and Apprentices of the United States and Canada, et al.**

*Elmer D. Christine* and *Walter Olenick*, for plaintiff.
*Forest J. Mervine*, for defendants.

DAVIS, P. J., July 16, 1954.—Plaintiff filed his bill in equity seeking to restrain defendants preliminarily and perpetually on final hearing from picketing plaintiff at the premises of the Young Men's Christian Association of Monroe County, at Stroudsburg, Pa., where plaintiff is engaged in installing the plumbing in a new YMCA building in process of construction pursuant to a contract previously entered into with the YMCA. A hearing was held, plaintiff produced testimony, defendants refrained from producing testimony, the record was transcribed and the matter was argued. Subsequent to taking of testimony defendants filed preliminary objections which were not called to the attention of the court, and thereafter an opinion and order was filed refusing preliminary injunction. Defendants then filed their answer and new matter and plaintiff filed a reply thereto. The parties then filed a written stipulation providing that defendant's preliminary objections be withdrawn, that the testimony taken at the preliminary hearing be considered as having been taken on final hearing and the requests for findings of fact and conclusions of law of plaintiff and defendants filed by the parties prior to the argument on the question of preliminary injunction be considered as requests filed by the parties after final hearing, that the pleadings filed to date and the testimony taken at the

hearing on preliminary injunction comprised the entire record in this cause, and that the matter now stands ready for final disposition by the court on the question of whether a permanent injunction be granted or the complaint dismissed. The stipulation further provides that one of the defendants, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, be dropped from the record without prejudice to either party. Counsel for the parties have stated orally to the court that they do not desire to argue the matter, that as far as they are concerned the matter is ready for final disposition by the court. Defendants in their answer and new matter, in addition to pleading to the merits of the controversy, raised the question of jurisdiction of this court on the ground that plaintiff is engaged in interstate commerce, and therefore the Federal law applies and it must be administered under Federal jurisdiction. Subsequent to the filing of the stipulation the court on its own motion set up the matter for argument on the question of jurisdiction.

### Findings of Fact

1. Plaintiff is an individual having his place of business at No. 15 Crystal Street, in the Borough of East Stroudsburg, County of Monroe and Commonwealth of Pennsylvania, and is engaged in the plumbing business and employs about 14 men.

2. Defendant, Local Union No. 655 of United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, is a labor organization operating in the County of Monroe and State of Pennsylvania.

3. Defendant, Ralph Paul, is the business agent of Local Union No. 655 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada.

4. Plaintiff provides plumbing supplies and services in and about the County of Monroe, State of Pennsylvania, and for the past three years has engaged in no plumbing services or activity outside the State of Pennsylvania.

5. Plaintiff in the operation of his business purchases yearly supplies and materials amounting to approximately $220,000 and 40 percent of these products in quantity and value are manufactured outside of Pennsylvania.

6. Ninety percent of plaintiff's supplies and materials are purchased within the State of Pennsylvania.

7. The majority of the employes of plaintiff are not members of Local Union No. 655, or of any other union.

8. No contractual relationship exists between plaintiff and Local Union No. 655 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada.

9. No controversy or labor dispute exists between plaintiff and any of his employes.

10. Local Union No. 655 does not represent the majority of the workers of plaintiff.

11. Defendants have made repeated attempts to persuade plaintiff's employes to join Local Union No. 655, but plaintiff's employes have declined to join the union.

12. In February 1953, plaintiff entered into a written contract with the Young Men's Christian Association of Monroe County, at Stroudsburg, Pa., hereinafter referred to as the YMCA, wherein plaintiff agreed to provide the plumbing supplies and labor for the erection of a new YMCA building on Main Street, Stroudsburg, Pa., the amount of the contract being $33,883.

13. In February 1953 other contracts for the heating, electrical and general construction phases of the building were consummated between the YMCA and local contractors.

14. On September 28, 1953, defendant, Ralph Paul, picketed plaintiff's place of business, where plaintiff's employes were working at the time, at the YMCA on Main Street, in Stroudsburg, Pa., carrying a sign bearing the following legend: "This job being picketed by Local No. 655, Plumbers and Steamfitters".

15. Upon the establishment of said picket line all construction work at the YMCA was stopped except work being done by employes of plaintiff and a very small amount of work done by some of the other contractors.

16. Subsequent to September 28, 1953, the legend on the sign carried by the picket was changed to read: "We are picketing this job. Local Union No. 655. Plumbers and Steamfitters Stroudsburg".

17. Since September 28, 1953, up to and including the present time, such picketing, under the authority and direction of defendants, has continued at the YMCA.

18. Prior to the above picketing, Local Union No. 655 by its members, agents or representatives, have picketed other operations of plaintiff, to wit, the construction of the General Hospital of Monroe County, East Stroudsburg, Pa., in August 1950.

19. Several weeks after plaintiff had agreed to supply the plumbing services at the YMCA and before plaintiff started work at the YMCA construction, defendant, Ralph Paul, submitted to plaintiff for execution a contract which would govern plaintiff's relations with his employes as to wages and conditions of employment, and which would require plaintiff to employ only union men.

20. Plaintiff being informed by his employes that they did not wish to become members of the union, declined to enter into this contract, and to this date has continued to decline a union contract.

21. Before plaintiff had started work at the YMCA defendant, Ralph Paul, informed plaintiff that Local Union No. 655 was going to picket the YMCA job inasmuch as plaintiff had the plumbing contract, and that plaintiff could expect picketing unless plaintiff's men joined the union.

22. Plaintiff did not at any time coerce or instruct his employes as to whether they should join a labor organization or whether they should not join.

23. Defendant, Ralph Paul, informed plaintiff on the YMCA premises that if plaintiff could get his men to agree to join the union, plaintiff's men would be accepted into the union by payment of the required dues.

24. Defendants have made numerous demands on plaintiff to have plaintiff sign a union contract.

25. At a YMCA meeting on November 12, 1953, defendant, Ralph Paul, stated to plaintiff that all plaintiff had to do was to call his men together and "see to it" that the men joined the union, and the picket at the YMCA would be withdrawn.

26. At a second conference at the Indian Queen Hotel in Stroudsburg, Pa., on November 18, 1953, statements were made by defendants through their agents and representatives that the key to the labor difficulty at the YMCA lay with plaintiff's "getting his men to join the union", together with other statements to the effect that all work at the YMCA would be resumed if plaintiff would agree to assign his contract to union plumbers, or would urge or encourage his men to join a labor organization.

27. Defendant, Ralph Paul, sent to plaintiff a registered letter written by Ralph Paul dated March 31,

1954, and received by plaintiff April 1, 1954, which letter read:

"Will you kindly arrange a meeting between your employees and myself for a discussion in the interests of organizing your men and thereby clearing the existing condition at the Y.M.C.A. Bldg. all my efforts to have such a meeting with your men have been to no avail, if you can arrange such a meeting there are to be no personalities involved and everything shall be on a pleasant basis, I shall be glad to meet at any time and place your men desire. Hoping you will be successful in your endeavor I remain

"Sincerely yours

Ralph Paul Business Agent Local 655
Phone 1379R"

28. Plaintiff has completed about 30 percent of his work at the YMCA with a loss of $400 to $500 occasioned by the fact that employes of other contractors refused to cross the picket line and proceed with their work.

29. Plaintiff will not be able to proceed with and complete his contract, which he is legally bound to complete, until the other contractors proceed with their work.

30. A "labor dispute" as defined in the Pennsylvania Anti-Injunction Act, 43 PS §206c, exists between plaintiff and defendants.

31. The picketing at the YMCA has been peaceful.

32. Defendants have never physically interfered with plaintiff and his employes in the course of their work at the YMCA.

33. Plaintiff is not engaged in interstate commerce nor does the record disclose that the business of plaintiff, and particularly that part of plaintiff's business involved in this controversy, substantially affects interstate commerce.

34. Plaintiff and defendants have agreed that the

complaint shall be dismissed as to the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada without prejudice.

### Discussion

Although a labor dispute exists as defined in the Pennsylvania Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206c, the provisions do not apply in this case for the reason that the controversy comes within the amendment of 1939 providing that the act shall not apply in any case, inter alia, "(b) where a majority of the employes have not joined a labor organization . . . (c) where any person, association, employe, labor organization or any employe, agent representative or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935": Act of June 9, 1939, P. L. 302, 43 PS §206d, (b) and (c).

The burden of showing that the business of the plaintiff affects "commerce" rests upon the defendants. This principle is recognized by both Federal and State courts. In Denver Building & Construction Trades Council et al. v. National Labor Relations Board, 186 F. 2d 326, 329, 330, the court said:

"In the Labor Act, however, no finding was made by Congress that all unfair labor practices affect commerce (see N. L. R. B. v. Jones & Laughlin supra, 301 U. S. at page 31, 57 S. Ct. 615); the required effect must be shown in each case. (Id., 301 U. S. at page 32, 57 S. Ct. 615.)"

In Haefele v. Davis, 373 Pa. 34, 41, 42, the court said:

"The question of federal jurisdiction in labor disputes arises only when the employer is engaged in interstate commerce or when his business substantially

affects interstate commerce; . . . . In order to oust this Court of jurisdiction, particularly on the second appeal of this case, appellants had the burden of establishing facts which would show the interstate character of the business involved. Since such facts do not appear in the record, there is no reason why this Court should at this point assume that it has no jurisdiction."

Ninety percent of the goods purchased are purchased from jobbers in Pennsylvania and shipped from the jobbers' place of business or warehouse in Pennsylvania. This leads us to conclude that 10 percent of the goods are purchased outside of the State and transported to plaintiff's place of business. Basing a presumption on a presumption we conclude that 30 percent of the goods purchased are acquired from Pennsylvania jobbers who have acquired the same from outside the State, and 60 percent of the goods purchased are manufactured and purchased in Pennsylvania. But plaintiff's business, except the appliance business, consists of more than the purchase and sale of goods, it includes a very substantial amount of labor (approximately 14 employes), and the evidence is silent on this phase of the business.

Does this purely local plumbing, heating and appliance business substantially affect interstate commerce? If it does then every corner grocery store or cigar store, every farmer who buys seed to plant and feed for his small herd is engaged in a business affecting interstate commerce. We do not believe that the commerce clause of the Federal Constitution or Labor-Management Relations Act warrants such an interpretation.

In Way Baking Co. v. Teamsters & Truck Drivers Local No. 164, A. F. of L., et al. 335 Michigan 478, 56 N. W. 2d 357 (1953), a baker selling at wholesale in the State of Michigan purchased flour used in the manufacture of his product from outside the State

and lard from a firm engaged in interstate commerce. While in the process of enlarging the plant labor trouble arose. The lower court held that plaintiff's business did not affect interstate commerce. The Supreme Court, affirming the lower court, and citing the Denver case, said (Page 494):

"It was further asserted that because of such situation it was necessary to convey flour, which it purchased for processing, from railroad yards to plaintiff's plant by trucks. Testimony of plaintiff's president discloses that flour was the principal ingredient used in plaintiff's operations, and that some purchases thereof were made in Michigan and others outside the State. It was further stated that lard, another important ingredient, was purchased from local establishments maintained by corporations operating without the State. It cannot be said from this record that any materials purchased by plaintiff without the State and transported in interstate commerce were delivered in such transportation to plaintiff's plant. That the interstate transportation as to such materials shipped by rail terminated at the warehouse of the carrier is apparent. The activities of the defendants of which the plaintiff complained did not affect transportation terminating at any point or points other than the plant itself where picketing was maintained. Whether interstate commerce was affected by such activities became, under the record in the case, an issue of fact. See National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U. S. 675 (71 S. Ct. 943, 95 L. Ed. 1284). The trial judge found that interstate commerce was not so affected, and we think that such finding was fully justified by the record. . . .

"The trial judge, as above stated, concluded that the activities of the defendants against which plaintiff sought relief, and against which the injunction issued was directed, did not affect interstate commerce. On

the record in the case the correctness of such finding is not open to question. We are not in accord with appellants' claim that the national labor relations act, as amended by the labor management relations act of 1947 must be construed as vesting sole and exclusive jurisdiction in the national labor relations board, and, hence, as precluding the State court from exercising jurisdiction, under the factual situation presented by the record. Rights of the character asserted here by plaintiff are recognized and protected by the State statute, above quoted, the purpose of which is in keeping with that of the Federal law. Said statute is penal in form, and must be regarded as a clear and unequivocal declaration of public policy."

Also Atlantic Coast Line Railroad Company, Petitioner, v. Standard Oil Company of Kentucky (No. 176), 275 U. S. 257, 72 L. Ed. 270.

The facts in the Michigan case are generally in point with the case under consideration. In the absence of any Pennsylvania case dealing with similar facts, and no such case has been cited, we shall follow it and the general principle established in Haefele v. Davis, supra.

Since the picketing is restricted solely to the YMCA premises we do not see how the appliance business of this plaintiff could be affected by this dispute.

The record does not disclose the amount of the appliance business nor where the goods are obtained. Consequently we cannot determine the amount involved in the plumbing and heating business nor the source of material used therein. Defendants have failed to meet the burden of proving that commerce would be substantially affected by this labor dispute.

Defendants emphasize the case of National Labor Relations Board, Petitioner, v. Denver Building and Construction Trades Council et al., supra, but that

case is not controlling because of a lack of similarity of facts.

In that case the National Labor Relations Board found that Gould & Preisner, an electrical contractor, purchased 65 percent of its raw materials outside of Colorado and also most of the merchandise purchased in Colorado had been purchased outside of the State, and also approximately six percent of its products were shipped out of Colorado.

The opinion of the circuit court reveals that at about the same time another labor dispute had arisen on another job so that the board concluded that the labor condition was such as would affect the whole business. We do not have a comparable labor situation in this case, no goods are shipped out of the State, and including the appliance business 60 percent of the goods purchased originate in Pennsylvania, and plaintiff is involved in no labor trouble except at the YMCA.

Plaintiff contends that assuming commerce is affected he falls within a classification wherein the National Labor Relations Board will not take jurisdiction, therefore this court should retain jurisdiction of the case.

The board set up five classifications of activity in which it said it would act, thereby implying that in activities not coming within these classifications it would not act: Commerce Clearing House Labor Law Guide. (Federal), sec. 3555, A, page 3105.

Under the evidence plaintiff would not possibly be involved in the first four classifications. The fifth classification was changed on June 30, 1954, and the board announced that the changed classification would apply to pending cases. The changes relating to classification 5 are reported in Commerce Clearing House Labor Law Guide, supra, sec. 71,299, page 76, 466, as follows:

"The Board has discretion to decide in which cases, of those affecting interstate commerce, it will exercise jurisdiction.

"The changes are:

"A. The Board increased the amount of direct outflow of interstate business required to bring a company under its jurisdiction, from $25,000 a year to $50,000 a year.

"B. The Board increased the amount of goods or services that must be supplied to interstate companies to bring the supplier under the Board's jurisdiction, from $50,000 a year to $100,000 a year.

"C. The Board established a requirement that the goods supplied by firms under paragraph B above ultimately go outside the state or the services supplied be part of the stream of interstate commerce. (There was no such requirement in the former standards.)

"D. The Board established a requirement that intrastate trucking companies and similar firms which are "links in interstate commerce" do at least $100,000 a year business for other interstate firms in order to come under Board jurisdiction. (The former standards did not contain any dollar criterion in this category.)

"E. Jurisdiction will not be exercised over general or public office buildings merely because they have tenants over which the Board exercises jurisdiction.

"F. A franchise from a national enterprise will not be sufficient in and of itself to bring a company under the Board's jurisdiction.

"G. The Board abolished the "combination category": Jurisdiction will not be determined by combining the percentages which a company has in each of the dollar-volume categories.

"The Board announced that these changes in its jurisdictional standards will take effect immediately.

The new standards will be applied to pending cases as well as those filed hereafter."

In our opinion it is clear under the evidence that plaintiff does not come within the classification wherein the National Labor Relations Board will take jurisdiction. Honestly and fairly, counsel for defendants has not argued that plaintiff does not come within the classification that the board will not accept, but rather that plaintiff should have the matter determined by the National Labor Relations Board and present the evidence to this court. Under these circumstances a Michigan court and a Wisconsin State board have taken jurisdiction on the basis that an appeal to the National Labor Relations Board would be futile. These cases are reported in Commerce Clearing House Labor Law Guide, sec. 71,296, pages 76, 464 and 76,465 as follows:

"The Michigan case involved picketing which was admittedly in violation of both the State Labor Relations Act and the NLRA. But the Court held that this fact did not prevent it from granting an injunction. The business of the picketed employer did not fall within the jurisdictional 'yardsticks' established by the NLRB to govern the exercise of its jurisdiction. In establishing those 'yardsticks' the Board had ceded its jurisdiction in such cases to state agencies, the court said. Since the applicable provisions of the state and federal laws were not inconsistent, the state court was authorized to grant relief.

"Moreover, the Michigan court ruled that it could grant relief because an appeal to the NLRB for action would be futile. This was so because the National Board would decline to entertain the case, under its established 'yardsticks'. Further, the injunction against picketing in this case was within the court's 'historic power over such traditionally local matters as public safety and order and the use of the streets

and highways.' And those powers were not curtailed by the NLRA. Thus an injunction against the picketing was granted.

"In Wisconsin, a union asked the State Board to hold a representation election, but the employer claimed that the NLRB alone had the right to do so. The Wisconsin Board, however, ordered the election. Like the Michigan court, the State Board ruled that it could act if appeal to the NLRB would be futile. Again, it was decided that the NLRB would decline to act because the employer's business did not come within the jurisdictional 'yardsticks'.

"—Satin, Inc. v. Local Union 445, IBEW (Mich. Cir. Ct. 1954) 26 Labor Cases 68,508, May 12, 1954.

"—Drivers, Salesmen, Warehousemen, Milk Processors, etc., Local No. 695, AFL (1954) WERB Decision No. 3741, May 24, 1954."

Under ordinary circumstances we would require evidence of the rejection of the case by the National Labor Relations Board or dismiss the action, but in this case where the gaunt steel framework erected to a large extent on the site of the former building on the main street of the town has stood unchanged for more than nine months, a constant reminder that, after all, the youth of the community are the real parties in interest, we feel that the public welfare demands action rather than delay. In the final analysis the undenied testimony shows that these defendants have committed a violation of the Federal Labor-Management Relations Act and the State Labor Relations Act. Under either jurisdiction injunctive relief is available. If we have erred in our conclusion that interstate commerce is not affected, we follow the Michigan court and the Wisconsin State board and hold that to require plaintiff to go to the National Labor Relations Board would be a futile thing, which

under the circumstances should not be required, and we have jurisdiction.

We pass to the next question, Is the picketing legal? As we said in a former opinion this case does not involve violence or threats of violence. The picketing has been entirely peaceful. Both the United States Supreme Court and the Pennsylvania Supreme Court have held that if the purpose or objective of the picketing is illegal then even peaceful picketing is illegal: Wortex Mills Inc., v. Textile Workers Union of America C. I. O. 369 Pa. 359; Bakery and Pastry Drivers et al. v. Wohl et al., 315 U. S. 769, 775.

The testimony of plaintiff Cleveland, and plaintiff's witness, Holt Wykoff, president of the board of directors of the YMCA, and others clearly shows that the purpose of the picketing was to coerce plaintiff into performing an illegal act, namely, requiring his employes to join the union. Such an act is illegal under the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §§211, 211.2(c), 211.5, 211.6.

"Defendants' purpose in picketing was to require plaintiffs to force their employes to join the union or to discharge them and employ others who are members of the union. Such a purpose is clearly unlawful and subject to restraint: sec. 13, Act of June 16, 1836, P. L. 784, 12 PS §1221; 17 PS §§281, 282, 2082, and the Act of February 14, 1857, P. L. 39, 17 PS §283; compare Main C. & D. Inc. v. Columbia etc., 332 Pa. 71, 2 A. 2d 750.": Wilbank et ux. v. Chester and Delaware Counties Bartenders, etc., Union, 360 Pa. 48, 52. Also see: Phillips v. United Brotherhood, etc., et al., 362 Pa. 78.

There is also evidence to sustain a finding that another purpose of the picketing was to force plaintiff into entering into a contract with the union. This is also an unlawful purpose: Wilbank et ux. v. Chester and Delaware Counties Bartenders, Hotel and Restau-

rant Employes' Union et al., supra. However, since defendants produced no testimony and at the argument did not maintain that the picketing was not illegal it is not necessary to pursue this phase of the case further.

Defendants maintain that plaintiff has not proved sufficient damage to warrant injunctive relief. The evidence shows plaintiff has suffered additional costs in the sum of $500 and will not be able to complete the remaining 70 percent of his contract. Plaintiff has also suffered the inconvenience, annoyance and general detrimental effect on his business of picketing for more than nine months, and the voluntary end thereof is not in sight. If necessary, these facts would warrant a finding of irreparable loss. However, both the United States Supreme Court and the Pennsylvania Supreme Court have held that restraint is the proper remedy when a union has attempted to coerce an employer into performing an unlawful act even though taking the form of peaceful picketing. In Phillips v. United Brotherhood, etc., et al., supra, Mr. Justice Horace Stern (now Chief Justice Stern), in a comprehensive opinion reviewed the authorities and concluded as follows:

"From these decisions, buttressed as they are by unassailable logic, it is clear that, since the union here was engaged in an attempt to coerce plaintiffs into performing an unlawful act, such attempt, even though taking the form of peaceful picketing, properly may, and should, be enjoined." We find no merit in this contention.

*Conclusions of Law*

1. There is no labor dispute between plaintiff and his employes.

2. There is a technical labor dispute between plaintiff and defendants.

3. The employes of plaintiff have a legal right to refuse to join a labor union.

4. The course of conduct of defendants was intended to coerce plaintiff to require his employes to become members of defendant union.

5. Picketing by defendants is coercive when its intent is to force plaintiff to require his employes to become members of defendant union.

6. The picketing of plaintiff's place of business at the Young Men's Christian Association of Monroe County at Stroudsburg, Pa., is unlawful.

7. This case does not come within the Labor Anti-Injunction Act of 1937, as amended.

8. Equity has jurisdiction in this case unrestricted by the Pennsylvania Anti-Injunction Act of 1937, or by the Pennsylvania Labor Relations Act or by the National Labor Relations Act or the Labor-Management Relations Act.

9. The complaint should be dismissed as to United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada in accordance with the agreement of the parties.

### Decree

And now, to wit, July 6, 1954, the court enters the following decree nisi:

1. Defendants, Local Union No. 655 of United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, and Ralph Paul, their servants, agents and employes, and each of them, and the officers, organizers, representatives, agents and members of defendant union, and all other persons acting in concert with them are hereby restrained from:

(a) Picketing, patrolling, exhibiting placards or interfering with plaintiff while engaged in his busi-

686

ness at the Young Men's Christian Association of Monroe County at Stroudsburg, Pa.;

(b) Coercing or intimidating plaintiff to sign a union contract;

(c) Coercing or attempting to coerce plaintiff to commit an unfair labor practice by picketing, exhibiting placards, writing, speaking or in any other manner whatsoever.

2. As to the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada the complaint is dismissed without prejudice.

3. The costs of this proceeding are to be paid by defendants.

The prothonotary will notify the parties or their counsel of the filing of this adjudication and decree nisi, and unless exceptions thereto are filed within 20 days from the date hereof, the decree nisi shall be taken as and for the final decree in the cause.