· MOODY *v.* CARNEGIE.

QUIETING TITLE—TAX SALE—NOTICE—RETURN OF SERVICE—EQUALLY DIVIDED COURT.

> Decree quieting title in plaintiff widow upon payment by her of amount defendant, purchaser at tax sale, had paid in taxes is affirmed by an equally divided court, where it appears from sworn statements in petition for rehearing plaintiff had not received notice of tax sale and of the amount required for redemption, notwithstanding officer's return that service on her late husband had been made upon "him personally" several years after his death.

Appeal from Wayne; Holbrook (Donald E.), J., presiding. Submitted January 9, 1959. (Docket No. 48, Calendar No. 47,501.) Decided June 6, 1959.

Bill by Bertha Moody against William Carnegie and Julia Carnegie to quiet title and void tax deeds. After decree dismissing, rehearing granted and decree entered for plaintiff. Defendants appeal. Affirmed by an equally divided court.

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160.

*George F. Mehling,* for plaintiff.

*Daniel Hodgman,* for defendants.

CARR, J. (*for affirmance*).  This equitable suit was instituted in circuit court by plaintiff for the purpose of obtaining a decree quieting title to certain land in Dearborn township, Wayne county.  Prior to December 2, 1933, the property in question was owned by Briggs Commercial & Development Company, a Michigan corporation.  On the date mentioned Abraham Moody and Bertha Moody, his wife, the latter being the plaintiff in the present case, became the owners by purchase.  The deed under which they took title was not recorded until November 17, 1954.  It further appears that Abraham Moody died on January 2, 1944, and it is not disputed that at that time plaintiff became the sole owner of the land.

Mr. and Mrs. Moody failed to pay the taxes for 1943, and the property was sold pursuant to statute[*] at a tax sale, the purchaser being the defendant William Carnegie.  The amount required to redeem from such sale was $13.51.  Defendant caused to be prepared and placed in the hands of the sheriff of the county for service the statutory notice, which was in terms addressed to "A. Moody, 1116 Livernois avenue, Detroit, Michigan."  Thereafter a return of personal service, stated to have been made on the 28th day of November, 1947, was made by a deputy sheriff of the county.  Such return indicated service on "A. Moody" by delivering same to "him personally" on the date specified.  Defendants rely on said return as indicating proper service on the plaintiff in the instant case, emphasis being placed on the presumption of verity attaching to an official act of the kind in question.

---

[*] See CL 1948, § 211.60 *et seq.* (Stat Ann 1950 Rev § 7.104 *et seq.*). —REPORTER.

Plaintiff subsequently became aware of the situation with reference to the lot, and entered into an agreement, under date of August 1, 1951, with Frank B. Donohue, whereby the latter assumed the obligation of causing an action to be instituted in court for the purpose of removing the cloud on plaintiff's title to the land. It was further agreed that if the litigation succeeded plaintiff should receive the sum of $250, otherwise a quitclaim deed given by plaintiff to Donohue was to be returned to her. Presumably as a result of this arrangement, an attorney was employed to represent Mrs. Moody and suit was started in circuit court in her behalf. Issue was duly joined, and the matter brought on for hearing. It is the claim of plaintiff that she was not informed by Donohue or by her attorney that her suit was to be brought up in court, and in consequence she was not present. The result was a decree dismissing the case for failure to establish material facts requisite to the granting of the relief sought. Subsequently plaintiff discovered the situation and obtained other counsel who filed for her a petition for a rehearing. This was done more than 4 months after the entering of the decree. However, the trial judge granted the petition, apparently concluding that plaintiff had not been treated fairly, that she should have been notified of the hearing and given an opportunity to be present and to testify thereat, and that an injustice had resulted.

On the rehearing plaintiff testified at some length, specifically denying that the notice of tax sale and of the amount required for redemption had been served on her. The officer who made the return of service in the proceeding was not a witness at either hearing. As before stated, defendants relied wholly on the return and the presumption of its correctness. The trial judge concluded that proper service had not been made and entered a decree granting relief to

the plaintiff as prayed in her bill of complaint, requiring, however, that she pay to defendants the amounts that they had expended in the payment of taxes on the land during the time that they claimed to own it. It appears from the record that defendant William Carnegie had executed a quitclaim deed to the other defendant. It is conceded, also, that the principal defendant had no interest in the property other than that acquired by his purchase under the tax sale.

Defendants have appealed from the decree entered, claiming that the trial court had no jurisdiction to grant the rehearing, and in any event that he abused his discretion in so doing. Emphasis is placed on the failure of the trial judge to specifically find that defendant William Carnegie was guilty of fraud. It is apparent, however, that in granting the petition the judge was convinced from the showing made that the rights of plaintiff had not been properly protected. It may be noted in this connection that on the first hearing defendant William Carnegie, called for cross-examination under the statute,* stated that he had contacted the Briggs Commercial & Development Company for the purpose of inquiring if that corporation was still the owner of the lot. He was advised that the property had been sold, and that it would be necessary to check records to determine the purchaser or purchasers. Defendant did not further pursue the inquiry, but did check the records in the office of the county treasurer, which apparently indicated that the lot had been assessed to A. Moody. It is a fair inference that the notice of the tax sale and amount necessary for redemption was prepared in reliance on the treasurer's record. That defendant did not make an earnest effort to discover the then owner, or the residence thereof, is evident.

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

Neither did he cause service to be made on the Briggs Commercial & Development Company which was at the time the owner of record. Had he done so, it is quite probable that the corporation would have endeavored to contact its successor in title.

So far as the record before us is concerned, it does not appear that there was any proper reason or excuse for the failure to notify plaintiff with reference to the first hearing. Obviously a proper presentation of her case required that she appear and testify. Whether the omission was intentional or otherwise, she was, as a practical proposition, deprived of her right to her day in court. It does not appear, nor is it claimed, that the trial judge was advised that notice of the hearing had not been given to Mrs. Moody. Under the circumstances we think that the court did not exceed its jurisdiction in granting the rehearing, nor was there any abuse of discretion in so doing. Obviously it was the only method that might have been followed to obviate an injustice to the plaintiff.

In *Berg* v. *Berg*, 336 Mich 284, a guardian *ad litem* was appointed for the defendant who was confined in a State institution for the criminal insane. The record in the case indicated that no effort was made on behalf of defendant to contest the plaintiff's right to the relief sought. The decree entered granted him all of the property that the parties had owned, it being required that he pay to the State the current rate for the support of defendant in the institution where she was confined. In considering the merits of a petition for a rehearing this Court concluded that the rights of the defendant had not been properly protected and that the withholding of the facts asserted in the petition, assuming the truth of the allegations, constituted a fraud on the court resulting in an inequitable decree which might not have been entered had the court been advised as to the

facts. An analogous situation exists in the case at bar. Had the trial judge been advised that plaintiff had not been notified of the hearing and given an opportunity to be present and testify in her own behalf, it is quite probable that the decree dismissing the case would not have been made.

It is also contended by appellants that the final decree is not in accord with the proofs. In substance it is argued that the presumption of validity of service of the notice of the tax sale and amount necessary for redemption was not overcome by proper proof. As before stated, plaintiff testified that the notice was not served on her. An examination of the return filed by the deputy sheriff does not disclose that it was in fact served on plaintiff. Said notice was addressed to A. Moody, to whom the records in the county treasurer's office indicated the property had been assessed. The return stated that service had been made on the party to whom the notice was addressed, with the further statement that it was served on "him personally." Had this service been made on plaintiff it must be assumed that the return would have so indicated. *Alpena National Bank* v. *Hoey,* 281 Mich 307, on which appellants rely, involved a different factual situation than does the case at bar. There the proof of service of a chancery summons in a foreclosure suit indicated that service had actually been made on the defendant. The officer making such return was a witness in the case and testified as to his practice in serving papers of the character in question. In the case at bar the conclusion of the circuit judge as to the fact in issue is supported not only by the testimony of plaintiff but by the return itself, which clearly indicates that service of notice of the tax sale was not made on Mrs. Moody.

In writing for reversal of the decree Mr. Justice BLACK asserts that the trial court was in error in granting a rehearing, that no proof was offered in

support of plaintiff's claim that the decree of December 2, 1954, was fraudulently obtained, and that failure to notify plaintiff of the hearing, if there was such failure, did not constitute a proper ground for granting the petition. As appears from the original record returned to this Court from the circuit court of Wayne county, plaintiff filed a sworn petition stating as matters of fact that at the time of the original hearing she was in good health and was ready and able to testify in her behalf on the trial, and that she was not notified by either her attorney or by Frank B. Donohue with reference to the trial although her presence in court was vital to a successful outcome of the litigation. She further said that she had received no information or communication of any kind from Donohue or her attorney during the period beginning August 1, 1951, down to and including the date of filing the petition. Apparently it was intended that the sworn petition should have the force and effect of an affidavit filed in support of the request for a rehearing. The inference is fully justified that the trial judge so considered it. It is significant to note that the order of the judge in granting the rehearing, which order was entered December 2, 1955, referred to plaintiff's motion as a "sworn petition."

Defendants did not file a sworn answer nor did they submit an affidavit, or affidavits, denying the material allegations of fact to which plaintiff had sworn in her petition. Rather, defendants' attorney, over his signature, filed an answer setting forth his objections to the granting of the relief sought. It does not appear that any request for the taking of oral testimony on the hearing of the petition was made. In consequence, the trial judge had before him merely the uncontroverted sworn statements of the plaintiff and the claim of defendants' counsel that he was not informed as to material facts set

forth in the petition. The practice of determining facts, involved in motions and petitions of the character here in question, on the basis of affidavits, especially when oral testimony is not offered to rebut such showing, is not improper. The trial judge was not in error in finding that the sworn statements made by plaintiff in her petition were true, and that, in consequence, she had been deprived of the right to her day in court.

The trial judge was entitled to assume that plaintiff's counsel would keep her advised with reference to the progress of the case, and particularly with reference to the hearing thereof. It is significant that in the colloquy between court and counsel at the opening of the first hearing on November 17, 1954, which Mr. Justice BLACK has quoted in his opinion, plaintiff's counsel made the statement, following an agreement to adjourn for 2 days, that:

"And I am almost certain that the plaintiff will be well enough to be here on that morning, also."

The comment might well have induced the judge to draw the inference that plaintiff's counsel was in communication with her and that she was advised as to the pending hearing. Otherwise, it is a fair conclusion from the record before us that the decree of December, 1954, dismissing the case, would not have been entered.

Depriving plaintiff of her rights to have her cause of action properly presented to the court through her own testimony operated as a fraud on her. Failure to advise the trial judge of the true situation to the end that arrangements might be taken to obtain her testimony was a fraud on the court whose duty it was to see that justice in the cause was properly administered. It is no answer to the situation presented to say that defendants are not shown to have been parties to the fraudulent conduct in question, nor

are we concerned at this time with the reasons for the failure of those who owed plaintiff the duty to advise that the case was set for trial, and that she should be prepared to testify, to observe such duty. Regardless of motives, the result was not in accord with her just rights. The consequences must fall on defendants to the extent of precluding them from profiting as a result of the failure to inform plaintiff, and the trial judge, of facts that both were entitled to know. On discovering the true situation as set forth in the uncontroverted sworn statements of the plaintiff in her application for relief the trial judge proceeded to remedy the injustice that had been done in the only effective way that was open to him. It must be born in mind that in the final decree the right of the defendants to be reimbursed for expenditures that they had made in the payment of taxes on the lot involved in the case was recognized and safeguarded.

The power of a court of equity to grant a rehearing, in order to relieve against fraud by setting aside a decree improperly entered, has been repeatedly recognized by this Court. In *Raniak* v. *Pokorney,* 198 Mich 567, it was held that:

"A court of equity may relieve against fraud, even to the extent of setting aside its own decrees, when founded thereon." (Syllabus 3.)

In *Allen* v. *Allen,* 341 Mich 543, a decree of divorce was set aside on petition filed over 3 years after it was entered, on the ground that a fraud had been perpetrated on the court, the fraud consisting in unwarranted concealment of a material fact. See, also, *Linn* v. *Linn,* 341 Mich 668, and prior decisions therein cited. In the case at bar the request for a rehearing, supported by the sworn statement of material facts, was addressed to the discretion of the court. It may not be said that such discretion was abused.

We are not in accord with the statement of Mr. Justice BLACK that "The equities of plaintiff in this case are not very impressive." That she was the rightful owner of the lot involved in the litigation is scarcely open to question. Defendant Carnegie had no interest other than such as was obtained by his purchase following the sale for delinquent taxes. The statutory requirement with reference to the giving of notice to the true owner, or to the last owner as shown by the records in the office of the register of deeds, was not observed. Proper service of the notice was not made, a fact which the return of the deputy sheriff disclosed. It is apparent, however, that on the trial of the issue in circuit court defendants relied on the asserted presumption of regularity of the act of the officer. The claim in this regard was rebutted not only by the testimony of the plaintiff but by the return which failed to show service on the plaintiff. Without reference to the value of the lot, plaintiff could not be deprived of title thereto other than by strict adherence to the requirements of the statute with reference to notice following a purchase under the delinquent tax sale. Courts of equity are bound to take cognizance of legal rights, particularly so in dealing with real property.

The trial judge made a proper disposition of the cause and the decree entered is affirmed, with costs to appellee. It does not appear that Donohue is now asserting, or that he has asserted, title to the lot or any interest therein. Any issue arising between him and the plaintiff in that respect should be determined other than by further litigation in the instant case.

DETHMERS, C. J., and KELLY, and SMITH, JJ., concurred with CARR, J.

BLACK, J. (*for reversal*). This is another case, like *White* v. *Sadler,* 350 Mich 511 (followed in *Melvin* v.

*Reading,* 351 Mich 332), in which we are asked to consider alleged neglect or disloyalty of former counsel* as ground for setting aside a decree or judgment entered against the party for whom such counsel acted—or failed to act. So is *Buhay* v. *Buhay,* 356 Mich 141.

Professors King and Wunsch, of Wayne State University Law School, recently said this (and we approve) by way of comment upon *White* (5 Wayne L Rev, p 184):

"It goes without saying that a client should be protected from a careless or negligent attorney. Remedies are available through the media of malpractice suits and disciplinary procedures within the bar association. Either of these processes is of most serious moment to the attorney, but both are necessary to uphold the dignity of the profession as a whole. The instant case is not the first to seek the setting aside of a decree because of neglect of the lawyer, but that seems an odd way to raise the issue of personal liability or wrongdoing. The prior attorney is not before the court when motion is brought or the appeal is taken. Since it is not a ground for setting aside the default, the matter should not even be raised in this manner."

Plaintiff's application for rehearing was late by all time-standards of Court Rule No 48 (1945). She failed to offer proof (at any stage of the case) supporting her claim that the decree of December 3, 1954, was fraudulently obtained. Furthermore, and even if her then counsel did in fact fraudulently fail to notify her as claimed,† such failure constituted no

---

* In this opinion we shall refer to plaintiff's original attorney of record as her "former counsel." His status in such regard continued up to the time plaintiff's petition for rehearing was filed by new counsel for plaintiff.

† The gist of plaintiff's charge of fraud appears in paragraphs 5 and 6 of the petition for rehearing. Such paragraphs read as follows:

ground for rehearing. Thus the chancellor should have denied the application for 2 reasons. The first has been indicated from *White* v. *Sadler*. The second is that there was and is no proof of the alleged fraud.

"A rehearing may not be granted after the lapse of 4 months from entry of final decree, in the absence of a showing of fraud. *Union Trust Co.* v. *Detroit Trust Co.*, 240 Mich 646. Even upon the allegation of fraud, a rehearing should not be granted after the expiration of the 4-months' limitation fixed by the rule, unless there is a sufficient showing that the charge of fraud can be sustained. *Denby* v. *Ellis*, 245 Mich 124." (*Naylor* v. *Washtenaw Circuit Judge*, 250 Mich 698, 701.)

To the facts related in the opinion of Mr. Justice CARR we would add the following:

This bill was prepared in plaintiff's behalf by her former counsel. It was sworn to by such counsel under date of June 26, 1952 and filed on that date in the Wayne circuit. Minor amendments of the bill were made, and the case came to ultimate issue. At opening of the first hearing (November 17, 1954) plaintiff's former counsel asked leave to include, by way of amendment, an allegation of recording of the then unrecorded deed (of 1933) by which plaintiff claimed and now claims title to the subject realty. Such former counsel said the deed was to be placed of rec-

---

"5. Plaintiff further shows unto this court that on or about November 17, 1954, and November 19, 1954, this cause came on for hearing in this court, and though at the aforesaid times plaintiff was in good health, ready, willing and able to testify in her behalf on the trial of said cause and in spite of the fact her presence in court on either or both of said dates was absolutely vital to the successful outcome of said litigation, she was not notified by either the said Frank B. Donohue or [plaintiff's former counsel] of any of the matters mentioned in this paragraph and or paragraph 4 immediately preceding.

"6. Plaintiff further shows unto this court that she has received no information or communication of any kind whatsoever from the 1st day of August, 1951 to and including the date hereof from either the said Frank B. Donohue or the said [plaintiff's former counsel]."

ord immediately, and that was done. The following continued colloquy ensued:

"*The Court:* Gentlemen, all we are arguing about is a matter of delay, and the court does not see any use of delaying the matter any longer or causing the parties to spend more money in litigation, attorney fees, and costs, and so forth; so the court is going to allow an adjournment until Friday morning to permit the plaintiff to record the deed; and the allegation is already in there in the amended bill of complaint that the plaintiff is the owner of the land in question. I do not think that there needs to be an amendment of the pleadings just to record the deed so that it will be admissible in evidence.

"[*Former counsel*]: That is fine, and I also will record with the deed the death certificate of the husband, so that will also be made a matter of title history.

"*The Court:* Very well.

"*Mr. Hague:* We will be back in Friday morning.

"[*Former counsel*]: And I am almost certain that the plaintiff will be well enough to be here on that morning, also.

"*The Court:* Very well. We will adjourn it until 10 o'clock Friday morning. November 19, 1954.

"[*Former counsel*]: It seems that we are in just about the same position as we were when we left here the other day. However, my instruments have been recorded.

"*The Court:* Yes.

"[*Former counsel*]: We cannot arrive at a settlement, so I suppose we had best just proceed as best we can.

"*The Court:* All right.

"[*Former counsel*]: I would like to call the defendant, William Carnegie, for cross-examination.

"*Mr. Hague:* First of all I would like to know whether or not the plaintiff is going to be here?

"[*Former counsel*]: I don't think she will be, if the court please.

"*Mr. Hague:* Then I won't proceed. I want an opportunity to cross-examine her, or examine her.

"[*Former counsel*]: Well, you have a right to subpoena her.

"*Mr. Hague:* I don't have to subpoena her. She is the plaintiff in the case. If you can proceed without the plaintiff here, go ahead.

"[*Former counsel*]: All right. I will call the defendant William Carnegie under the statute* for cross-examination."

Turning pages of the transcript further, we find that plaintiff rested her case at end of this discourse:

"[*Former counsel*]: I will at this time again offer the photostatic and certified copy of the death certificate, which is marked exhibit 2, of the grantee—of one of the grantees named in exhibit No. 3. I believe at this time this exhibit 2 is properly admissible in evidence, to follow the chain of title.

"*Mr. Hague:* No proof that the man in the death certificate and the Abraham Moody in the deed is one and the same person. Might be 25 Moodys or Abraham Moodys.

"*The Court:* Yes. That is true. I believe you should connect the two up.

"[*Former counsel*]: Very well. May I just glance at the pleadings.

"*Mr. Hague:* Suit started by Bertha Moody. What relation is she to Abe Moody? I don't know. That is why I wanted the plaintiff here. He said he would bring her this morning. He said the last time he was here. He said, 'I will have my client in court, Friday morning,' and I expected her to be here. I have questions to ask her.

"[*Former counsel*]: I have no further questions of this witness.

"*Mr. Hague:* I have no questions of Mr. Carnegie.

"*The Court:* You may step down.

---

* CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

"[*Former counsel*]: If the court please, that will be the plaintiff's case. I will now rest."

Defendants thereupon moved to dismiss. Plaintiff's former counsel insisted that he had made "a prima facie case." The chancellor, ruling against him, said:

"*The Court:* Well, I don't believe you have, because the deed which you have introduced in evidence is a deed that was just recorded yesterday. The record title is what the notice purports to convey notice to. The court is bound, under the evidence here, to dismiss the case."

Decree dismissing the bill was entered December 3, 1954. April 28, 1955 (plaintiff meanwhile having changed counsel), this petition for rehearing was filed. July 30, 1956, plaintiff was sworn as a witness for the first time. She did not, however, support her petition-allegation that earlier proceedings in the case went along without knowledge on her part and without notice from her then attorney.

Here we reach the point of departure from the opinion our Brother has proposed for signature, and here we think the total inapplicability of *Berg* v. *Berg*, 336 Mich 284, becomes evident. The transcript of plaintiff's testimony fails to show that her former counsel did not keep her informed of the progress of the case through the original hearing. It fails to hint or suggest that the decision to keep plaintiff out of the courtroom on the original hearing, and to refrain from taking her testimony, was not the result of advice, and concurrence with advice, of counsel. Furthermore, and even if former counsel did misadvise his client—even though by design or neglect he did keep her in ignorance of the hearing and its consequences,—we have no right to visit the consequences of such possible turpitude on these defendants. Is this not another case, like *White* v. *Sadler*

and *Melvin* v. *Reading, supra,* where the mournful result of neglect or malpractice of counsel (if in fact counsel was guilty thereof) is a matter for exclusive disposition between the attorney and his client? To answer other than affirmatively would tend to encourage the practice, by those defeated in the regular course of litigation, of engaging new counsel for the purpose of obtaining new trials and rehearings on allegation that former counsel was negligent or faithless. We do not intend to countenance any such practice and refer again to Mr. Justice Voelker's suggested treatment of similar charges (*White* v. *Sadler, supra*).

These defendants did not bear the burden of proof below. Contrary to former counsel's quoted declaration, it was not their duty to subpoena plaintiff, or to attempt service of a subpoena on her, and their omission of such action did not subject their cause to the peril of ultimate rehearing and the consequent compounding of litigatory expense. Their responsibility was defensive only. They concealed nothing from the court and, so far as plaintiff's failure to appear as a witness was concerned, their counsel rightfully challenged his opponent to call her in. The challenge was evaded, without explanation. If, at that time, the chancellor felt that counsel was letting his client down—and we repeat that there is no proof of the fact,—he could and should have acted in pursuance of Court Rule No 32 (1945) (see *Mathews* v. *United Association,* 351 Mich 293, 301) and should not, on later hearing, have penalized defendants for that which they had no part in doing or omitting.

We hold that plaintiff has mistaken her remedy if, as alleged in the petition for rehearing, it is true that her former counsel and Mr. Donohue kept her in ignorance, to her prejudice, of the approach of hearing and events transpiring during such hearing, including entry of decree. Such claims should be made

the basis of an action against Donohue or former counsel, or both, each being interested in the suit solely on account of the curious instrument of August 1, 1951, by which Mrs. Moody delivered to Donohue (a) the then unrecorded deed (from Briggs Development Company to Abraham Moody and Bertha Moody), and (b) a quitclaim deed to the subject realty naming one Donald V. Donohue as grantee, and by which the parties (Bertha Moody and Frank B. Donohue) agreed upon the following course of litigation and division of litigatory proceeds:

"These deeds are to be deposited in escrow with [former counsel], Detroit, Michigan.

"Court action will be started immediately to effect good title in the name of Bertha Moody.

"If tax title held by Steve Carnegi [sic] can be set aside, the sum of $250 shall be paid to Bertha Moody, if unable to correct title the deed as mentioned above shall be returned to Bertha Moody.

"All expenses in connection with litigation in correcting title shall be paid for by Frank B. Donohue."

By the 1955 petition for rehearing, it became known that plaintiff Moody (in 1951 prior to commencement of suit) had delivered such quitclaim deed of the subject realty (naming a complete stranger to the suit as grantee) to former counsel as "escrow" agent. Thus it came to judicial attention that an apparently appealing bill, presented by this widow, had been used to front for those who would traffic in litigation for profit. Holding for reversal, we suggest that these facts alone are quite sufficient to show that plaintiff's bill, from the very date of its filing, carried no real equity into this court of equity.

Fairness to the chancellor requires emphasis that the 1951 agreement to litigate and divide was not brought to his knowledge until the petition for rehearing was presented. However, and no matter at what stage such knowledge arrived in court, it would

appear that an order making the two Donohues parties to the suit was in order and that the combination of champertous odor and manifest laches would and should have moved to the forefront of judicial olfaction. Where it appears of record that all necessary parties are not before him, the chancellor should not proceed until such parties have been brought in according to established practice (*Love* v. *Wilson,* 346 Mich 327).

It is said by Justice CARR that defendants "did not file a sworn answer (to the petition for rehearing) nor did they submit an affidavit, or affidavits, denying the material allegations of fact to which plaintiff had sworn in her petition." Is this to suggest that a sworn answer (affidavit or formal pleading) to a tardy petition for rehearing must be filed on peril of having petition-allegations of fraud, aimed at the petitioner-affiant's attorney, taken as true? What authority—ipsedixitism aside—supports our Brother's fancy? And how, if any such authority did exist, could the defendants in this particular case swear by answer or affidavit to the controverting facts that are said to be necessary? Surely Justice CARR has failed to perceive the utter impossibility of that which he would exact of these defendants. Forgetting for the moment the question of privilege, no one, other than plaintiff and her erst attorney, could depose to communications, or want of communications, passing between the two in the course of the attorney-client relationship.

That which follows does not offend our unanimous declaration, in *White,* that extreme cases may arise where it is necessary to hold that *proven* neglect or faithless conduct of an attorney is of such nature as to call for an order vacating a judgment or decree. See *White's* report (pp 522, 523). This is no such extreme case. It calls for treatment as in *White.*

We would turn to sweet dulciloquy. Is it not possible that plaintiff's charges of professional neglect or faithless conduct have, in all good if errant faith, been levelled at the wrong party-target? *White* v. *Sadler, supra,* which by all standards is destined to become a leading case, says so. So do the undersigned. This leads us to say something more. Since there is no proof of actionable fraud leading to or inducing its entry, the decree of December 3, 1954, became and now remains *res judicata* so far as concerns the original parties litigant. We cannot evade saying so without leaving all decrees open to vagarious attack long after expiration of the final limitational period Court Rule No 48 (1945) has fixed.

One further thought upon the subject of fraud. Our Brother would try, and then proceed to convict, former counsel of having fraudulently failed to notify his client of the hearing and proceedings leading to the (first) decree dismissing her bill. It is proposed that we so proceed absent a shred of evidence (we said "evidence"); without which all charges of fraud must fail. And this is to be done— not unlike the procedures of the English Court of Star Chamber—without former counsel having been apprised of the fact that he has been informed against, tried by *ex parte* affidavit, and then convicted. Holding no brief for or against such former counsel, we at least would afford him the rudiments of due process before proceeding to hold that fraud on his part taints the original decree.

The equities of plaintiff and those interested with her in the subject matter are not impressive. The suit was conceived in the first place by what on its face is an agreement of champertous maintenance. The subject realty is a vacant lot, around which construction of homes has commenced in recent years. Prior to defendants' purchase thereof (at tax sale proceedings culminating in 1947) the ter-

ritory around the lot was covered with brush. So was the lot. Plaintiff has never seen the lot. For 13 consecutive years she paid no taxes (assessed upon and against the lot). Between the time of claimed title-acquisition by defendants (1947) and entry of the second decree (1957), defendant William Carnegie had paid taxes (assessed against the lot during such period) aggregating with interest $622.06 in amount. During the same period he cleared the lot of brush preparatory to sale thereof. It is obvious that the lot has recently become valuable; whereas for many previous years it was unworthy of plaintiff's attention. Finally, plaintiff agreed (in 1951) to take $250 for her claimed interest in the lot should that interest be sustained in court. She should be relegated to suit or complaint against others, leaving intact the rights of defendants as fairly and jurisdictionally adjudged by the first decree in this case.

We vote to reverse and remand for entry of order vacating the decree of July 16, 1957, and reinstating the decree of December 3, 1954. Further, and if same is deemed necessary for title purposes, we would authorize an order below directing the two Donohues (also former counsel if desired) to show cause why such reinstated decree should not be adjudged binding as against possible interest on their part in the aforesaid subject matter. Defendants should have costs.

Finally, we recommend to the chancellor that he pursue the practice outlined in *White;* also in *Carras* v. *Bungalow Sandwich Shoppe Co.,* 257 Mich 467; and that he send here due report of his doings and findings in the premises. Former counsel is entitled to a hearing. He should be disciplined or acquitted depending on facts not yet adduced.

Edwards, Voelker, and Kavanagh, JJ., concurred with Black, J.