HAENLEIN *v.* SAGINAW BUILDING TRADES COUNCIL, A.F.L.

1. LABOR RELATIONS—UNFAIR LABOR PRACTICES—DAMAGES—DEFAULT
   —JURISDICTION.

   Decree enjoining certain illegal and unfair labor practices and
   holding appellants liable in substantial damages is affirmed
   per BLACK and KAVANAGH, JJ., on ground that default of
   appellants had been regularly entered and no motion to set
   it aside had been timely filed and no fraud was claimed or
   shown and per DETHMERS, C.J., and CARR and KELLY, JJ.,
   on ground that trial court had not abused his authority in
   proceeding to trial without appellants having been present or
   represented thereat or in denying their motion to set aside
   the decree and grant a rehearing and because claim trial court
   lacked jurisdiction in that plaintiff was engaged in interstate
   commerce had not been properly pleaded and was not sub-
   stantiated at the trial was without merit.

2. COSTS—AFFIRMANCE OF DECREE.

   Costs are awarded appellee in suit to enjoin unfair labor prac-
   tices upon affirmance of decree by BLACK and KAVANAGH, JJ.,
   and notwithstanding appellants would have prevailed under
   opinion concurred in by SMITH, EDWARDS, and SOURIS, JJ.

   SMITH, EDWARDS, and SOURIS, JJ., dissenting.

Appeal from Saginaw; Bach (Arthur M.), J.,
presiding. Submitted April 13, 1960. (Docket No.
53, Calendar No. 48,285.) Decided September 16,
1960. Rehearing denied October 10, 1960. Cer-
tiorari denied by the Supreme Court of the United
States February 20, 1961.

Bill by Andrew J. Haenlein against Saginaw
Building Trades Council, A.F.L., International

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur, Labor § 590.
[2] 14 Am Jur, Costs § 92.

Brotherhood of Teamsters, Chauffers, Warehouse-
men and Helpers of America, Local Union No. 486,
Neil Dalton, Jr., and others for injunction against
certain illegal and unfair labor practices. Default
entered against defendants International Brother-
hood of Teamsters and Neil Dalton, Jr. Decree for
plaintiff. From a denial of petition to set aside
decree and grant a rehearing, the defaulted defend-
ants appeal. Affirmed.

*Martin & Martin* (*Walter Martin,* of counsel) and
*Gilbert & Gilbert* (*Donald W. Gilbert,* of counsel),
for plaintiff.

*George S. Fitzgerald, David Previant, David Leo
Uelmen* and *Vandeveer, Haggerty, Garzia & Hag-
gerty,* for defendants International Brotherhood of
Teamsters and Neil Dalton, Jr.

Black, J. The tie game played by *Moody* against
*Carnegie* a year ago (356 Mich 434) did but fore-
cast our disagreement in this case.

Having bumped my own way through this Court's
bulbous verbosity of dissertation, upon the supposed
elasticity of time-limitations appearing in Court
Rules Nos 28 and 48 (1945), I find the field clear for
independent judgment that a personally served de-
fendant (or plaintiff for that matter), seeking by
late motion or application to avoid his entered de-
fault (on strength of which due proceedings have
been taken), may do so only by charging and prov-
ing that his litigant opponent has committed a fraud,
upon him or the court, either in bringing about
entry of such default or in the inducement of inac-
tion by such personally served defendant. Such
judgment shortens the present opinion, which is
well.

In *Moody* the total time allowed—by Court Rule
No 48—for application for rehearing had expired.

Here the corresponding time allowed by Court Rule No 28—for setting aside the default. of defendants Dalton and International Brotherhood—had expired more than 8 months prior to filing of the present petition for rehearing. It is *not* claimed that plaintiff, in the proceedings leading up to entry of such default or, for that matter, in the course of proceedings thereafter, was guilty of fraud or other deception which, according to recognized exception, would relieve such defendants from the limitational consequences of said Rule No 28. Further, and as against the claim of these defendants that entry of their default was irregular, I agree with Judge Bach that the default proceedings were meticulously proper and that such defendants were repeatedly and promptly notified thereafter, not only of the fact of entry of their default, but of impending trial of the cause.

No heed was given, by defendants Dalton and International Brotherhood, to any of these notices. The last one was given by the assignment clerk of the court. By it counsel of record were notified, under date of October 9, 1958, that the cause would come on for trial October 21, 1958 (which it did). Between the date of such notice and the stated date of trial, Milwaukee counsel appearing for defendants Dalton and International Brotherhood wrote a Saginaw representative of defendant Local Union No. 486 as follows:

"We received notice from William L. Hellerman that the Haenlien case was set for trial on October 21, 1958. We understand that the Teamsters have no interest in the Haenlien Company and do not desire to litigate the issues involved in that case. We suggest that your local attorney inform the court and the plaintiff's counsel of this fact with the view in mind of having the Teamsters dismissed as a party by stipulation."

This letter, proving as it does timely knowledge of counsel that hearing of the cause was imminent and that a decision "not to litigate" had been reached, fully supports the chancellor's summary conclusion "that there was no intention on the part of defendants [referring to defendants Dalton and International Brotherhood] to defend the action."

In denying this application for rehearing, the chancellor rightfully followed the rule of *White* v. *Sadler,* 350 Mich 511, that is to say:

"Our Court has traditionally been strict on setting aside defaults once regularly entered. Where a default following personal service is regularly taken, the court rule providing that it shall not be set aside after a certain time (presently 4 months) has generally been regarded as mandatory (*Hensey* v. *Hensey,* 331 Mich 518; *Gombasy* v. *Gombasy,* 318 Mich 139; *Watkins* v. *Wayne Circuit Judge,* 247 Mich 237), and this rule, however, harsh, has been subject to few exceptions, the most notable being that of fraud (*Hensey* v. *Hensey, supra*), which is not urged or suggested here." (Quotation from *White,* pp 521, 522.)

An application for rehearing under Court Rule No 48, by a party in default, provides no means of getting around the time-limitation of Court Rule No 28, which is to say that these defendants presently have no standing to apply under Rule No 48 for rehearing. Their default has never been set aside. Nor has any petition or motion to vacate such default been submitted. Consequently, this application was out of order and is now out of order. See, to the point, *McInerney's, Inc.,* v. *Dunford,* 341 Mich 477.

A final question is raised; that no State court may entertain jurisdiction over a case "which originated with an employer's charge of unfair labor practices against unions in an industry which affects com-

merce," unless there is "proof of violence." Our recent decision in *Town & Country Motors, Inc.,* v. *Local Union No. 328,* 355 Mich 26, is cited in support.

In my view this jurisdictional question was not open to consideration below, nor is it here, for want of fact-proof of its decisive premises. See *Austin* v. *Painters' District Council,* 339 Mich 462, 484, 485. There the defendants, by "petition to reopen the cause for certain purposes," sought without success to introduce a corresponding defense of exclusively Federal jurisdiction. Sometimes, jurisdictional questions need proof to make them effective. That is true here. The asserted want of jurisdiction does not appear in or on the face of the record.

I would affirm, with costs to plaintiff.

SUPPLEMENT (July 12, 1960):

This case was duly assigned to the writer prior to submission thereof during the April term. In pursuance of such assignment the foregoing opinion was submitted for consideration of our membership on May 11, 1960. Now, under term-delayed date of June 30th, Justices CARR and SMITH have gotten around to writing that the Court should pursue other and separate courses toward appellate judgment. One would affirm with explanation of what he has written in *Moody* v. *Carnegie,* 356 Mich 434. The other would reverse for want of determination below of a question of jurisdiction, pleaded affirmatively by these defaulted defendants, the validity of which question depended below and depends now on defensive-essential proof the defaulted labor union chose not to present.

My Brother CARR, bolstering his extended writing in *Moody,* refers to the allegedly defrauded party (in that case) as "an elderly widow." The "elderly widow," for whom my Brother bleeds anew, was shown in the cited case as having been party to a

secret agreement for champertous maintenance of the suit; her share of the litigious spoils to be $250 in event of success with the subject realty going to the thoroughly concealed real party in interest (one Frank B. Donohue). For Justice CARR's conclusionary presentation of these facts, see 356 Mich at page 436. For my presentation thereof, with direct quotation of the agreement to sue in the name of the "elderly widow," see pages 450 and 451 of the same volume.

I would say this only, by way of compendious reply to my Brother's bootstrap review of *Moody*: At first writing Justice CARR warily refrained from saying *who* perpetrated the "fraud" as found by him. Writing in today's case, he is yet unwilling to name and so accuse the alleged perpetrator. One thing is sure. Defendant Carnegie and his counsel were innocent of fraud, or participation in the commission of fraud. So, if "fraud" really did taint the plan and the presentation of the suit brought in Mrs. Moody's name, was it not committed exclusively by some one or all of those who participated in the illegal agreement to sue and divide?

Aside from the above, both opinions of *Moody* speak for themselves. One group would insert a stretchable-at-will number of weeks, months, or years in the time-limitational periods of Court Rule Nos 28 and 48 (1945). The other group would not. Such being the divisive state of things, how trustworthy—anyway—are limitations of time by court rule? Let troubled lawyers answer in the safe privacy of Michigan law offices, seasoning their speech with salt\*, and let them invent more and more arbitrational ways of keeping their clients out of our courts.

---

\* "Let thy speech be alway with grace, seasoned with salt, that ye may know how ye ought to answer every man." (Colossians 4:6.)

As for Mr. Justice SMITH's opinion, I can say only that my signature will never sanction the mere pleading, of crossed jurisdictional fingers tagged "you can't touch us," as a means of forcing the trial court to investigate and record the evidentiary facts which deny or uphold local jurisdiction under the national labor relations act. That burden rests on the affirmative pleader, and our trial courts are not to be toyed with by the practice of depositing such a pleading and then ignoring the court. Which is to say that this defendant labor union should have presented proof in support of its jurisdictional plea if possessed of such proof. There being no such proof, clear jurisdiction to proceed appeared below and now appears on the face of this record.

Today's question of jurisdiction is simple of presentation: Did the court have power to enter upon the inquiry presented by the pleadings? The very nature of its self-styled "affirmative defense" is an admission by the defendant union of a "yes" answer. By that plea the union asked the court to receive evidence in support thereof and, upon such evidence, to find judicially that it—the union—was immune from State court suit as pleaded. Having duly acquired jurisdiction—conferred by the plaintiff's bill and the defensive pleadings as filed—the court below was authorized to proceed until it was "judicially informed that its power over the cause has been suspended." *Phoenix Insurance Company* v. *Pechner,* 95 US 183, 186 (24 L ed 427). It was never so informed, and this my Brother SMITH admits.

I voted to sustain the defendant union in *Town & Country Motors, Inc.,* v. *Local Union No 328,* 355 Mich 26, because that union amply supported, with proof, its plea to the jurisdiction. I vote here to overrule the defendant union because it has failed to offer proof supporting its like plea. When a union is right, I shall vote to support its cause. When it

is wrong, I shall vote to say so. No particular class of litigant is always right, which remark goes for corporate unions and labor unions alike.

I vote again to affirm, with costs to plaintiff.

KAVANAGH, J., concurred with BLACK, J.

SMITH, J. (*dissenting*). We are concerned at the threshhold of this case, as we were in *Taylor* v. *Auditor General,* 360 Mich 146, with a question of jurisdiction.

One of the appellants set up lack of jurisdiction over the subject matter as an affirmative defense in a suit brought by the appellee to obtain an injunction in a labor dispute:

"As and for an affirmative defense, defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 486, AFL-CIO, alleges that the plaintiff's business and the employment relations of the plaintiff affect interstate commerce within the terms and definitions of the national labor relations act, 29 USCA, § 151 *et seq.,* exclusive jurisdiction over which resides in the national labor relations board; and further alleges that any assumption of jurisdiction by the courts of the State of Michigan would violate article 1, § 8, and article 6 of the United States Constitution.".

It should be obvious to any lawyer that reliance is being placed on the doctrine of Federal pre-emption, a doctrine vital to the effectuation of national policy in the field of labor relations. See *Town & Country Motors, Inc.,* v. *Local Union No. 328,* 355 Mich 26. When such a jurisdictional question has been brought to the attention of a court, its first duty is to make an inquiry and determination even despite failure of the parties themselves to plead or argue the question. Thus, in *New York, N. H. & H.*

*R. Co.* v. *Jenkins,* 331 Mass 720, 728 (122 NE2d 759), *reversed on other grounds,* 350 US 155 (76 S Ct 227, 100 L ed 166), the court held: "It is the duty of the court to decide its jurisdiction when the question appears on the record even though the point has not been raised by the parties." This, however, was not done by the chancellor below.[1]

It answers nothing of substance to say that the appellant alleged no "facts" in support of its jurisdictional defense. What it alleged in its sworn answer was that plaintiff's business and employment relations affected interstate commerce. It asserted that exclusive jurisdiction over the case resided in the national labor relations board, and cited specifically the applicable sections of the Federal code. Are these "facts"?

Much ingenuity has been spent in the past distinguishing facts from conclusions, and questions of fact from questions of law. We cannot build the jurisprudence of a great State upon these slippery semanticisms. They represent, in all but the simplest cases, of which this assuredly is not one, terms not susceptible of either definition or accurate description. They are often *ex post facto* rationales for decisions reached, rather than reasons for arriving at the decision. Moore points out that the Federal courts under their present rules "are not hampered by the morass of decisions as to whether a particular allegation is one of fact, evidence, or law."[2]

No more should we be so hampered. The Federal courts have regarded their rules as freeing them from such mysticisms and we, as well, have adopted a liberal interpretation of our rules of pleading. *Baker* v. *Gushwa,* 354 Mich 241. If a pleading gives

[1] The authority of the chancellor to make such a determination is well established. *Teeter* v. *Teeter,* 332 Mich 1; *Lehman* v. *Lehman,* 312 Mich 102; *In re Estate of Fraser,* 288 Mich 392.

[2] 2 Moore, Federal Practice (2d ed 1948), § 8.13, at p 1647.

a fair notice to the other party of the basis of the claim or defense asserted, with such reasonable particularity as the circumstances of the case permit (call it fact, law, conclusion, mixed question, or whatnot), the pleading has fulfilled its function, and it is not necessary (Court Rule No 17, § 2 [1945]) to go further and plead one's evidence. There could be no reasonable doubt in the mind of any party to this litigation that it was defendant's position that the national labor relations board had exclusive jurisdiction over this case on the ground that interstate commerce was affected. It was not the pleader's burden to prove this assertion in his pleading. If plaintiff were actually in doubt as to what this defense was all about, he could have demanded greater particularity in the pleading. There is no doubt that he knew how to make such demand, as will next appear.

A motion was made to strike the entire answer of the appellants, which contained the affirmative defense. It was not made within the 15 days specified by Court Rule No 27, § 6 (1945), but some 8 months later. It was granted and a default taken for want of an answer. The objections to the answer were directed to the paragraphs by which facts alleged in the bill of complaint were denied; no reply was made to the affirmative defense and no objection was raised to the manner in which it was made. As the cause thus proceeded nothing appeared to suggest that the defense of lack of jurisdiction was frivolous or otherwise did not deserve the attention of the chancellor. Counsel for the appellants did not contest the motion, indeed, took no further action until some time after the default decree had been entered. Yet the inaction or ineptitude of counsel does not relieve a court of the duty of determining its own jurisdiction. *Jones* v. *Amsel*, 388 Pa 47, 51 (130 A2d 119): "The chancellor himself is not [because of

failure of the parties to raise the issue] thereby relieved of the obligation of determining his own jurisdiction."

The employment of an analogy may serve to bring the issue before us in sharper focus. We will assume that through some misconception of the law, a bill for divorce is filed in the probate court, that general appearance is entered by the defendant, who challenges jurisdiction in the answer, that thereafter he writes letters to all parties that he will not participate in the trial, does not do so, and that decree *pro confesso* against him is taken. The decree of the probate court is a complete nullity. Challenge thereto will be heard by any court at any time from any party and will be raised by any court itself, *sua sponte,* should the circumstances become known to it. No rights can be built on such a decree, any officer attempting execution on the faith thereof is a mere trespasser, and the decree may be directly or collaterally assailed. In short, it is a mere *brutum fulmen,* wastepaper. See *Fox* v. *Martin,* 287 Mich 147.

Finally, it is argued that defendants did not move to vacate the default. What they did, more than 4 months after the entry of the default, was to file a pleading called "petition for rehearing" in which they requested that the decree be set aside, that they be allowed to file an amended answer, and that a rehearing be granted. The name attached to a pleading does not establish its character: it must be construed so as to accomplish its manifest purpose. The chancellor construed it as a prayer that the default be set aside and in so doing he was clearly correct.[3]

---

[3] The chancellor held, in part, as follows: "Rule No 28, § 4 (1945), provides proceedings to set aside a default must be made within 4 months after the default is regularly filed and entered. This was not done." Also: "Defendants further allege the default should be set aside because of the neglect of the attorneys." Also: "This writer is a visiting judge and many trips were made to hear this

Generally a motion to set aside a default must be made before the expiration of the 4-month period of Court Rule No 28 (1945). But even assuming this default to have been "regularly" taken, despite the unanswered jurisdictional question, the policy underlying the rule limiting reconsideration must be weighed against the possible confusion that would result from permitting such a decree to remain outstanding, although beyond the power of the court, void, and subject to collateral attack. Congress, in the exercise of its plenary power in the field of labor relations affecting interstate commerce, completely displaced State power to deal with matters entrusted to the national labor relations board, *Guss* v. *Utah Labor Relations Board,* 353 US 1 (77 S Ct 598, 609, 1 L ed 2d 601), and acts of a State court intruding upon the jurisdiction of the board are nullities and vulnerable collaterally. *Cf. Kalb* v. *Feuerstein,* 308 US 433 (60 S Ct 343, 84 L ed 370). See, generally, Restatement, Judgments, § 10, comment b.

Reliance upon *Austin* v. *Painters' District Council No. 22,* 339 Mich 462, is misplaced. In that case, defendants attempted to interject a jurisdictional point in a supplemental brief on appeal. This court examined the record and found nothing therein to form a basis for raising the point, concluding that "it is evident that defendants' purpose in seeking to reopen the case was to explore the possibilities of establishing evidence upon which to base a Federal question." *Id.* at 485. Where the point is not raised frivolously, proper respect for congressional purpose and the orderly administration of justice compels a court to consider the question of jurisdiction.

Whether there is jurisdiction of the subject matter in this cause cannot be determined without further

matter, and afford all parties their rights. It can find nothing in the record to justify setting aside the default because of neglect of the attorneys."

inquiry.   In *Town & Country Motors, supra,* there was a lack of jurisdiction.   Here there may be or there may not be.

What appellee's argument actually presents is a monument to Baron Parke, whose "almost superstitious reverence for the dark technicalities of special pleading"[4] was so profound that he resigned from the bench when liberalizing reforms were introduced.   The union, appellant before us, pleaded lack of jurisdiction over the subject matter from its first pleading in the trial court to its briefs before us.   The point has never been ruled upon from that day to this, yet it is now proposed that we affirm a judgment against it of some $20,000.   True, its counsel handled the case poorly,[5] but poor handling does not invest a court with jurisdiction over the subject matter.

The situation is reminiscent of Sergeant (later Mr. Justice) Haye's dialogue, "Crogate's Case; A Dialogue in the Shades on Special Pleading Reform."[6]   Here Baron Surrebutter (obviously the Baron Parke, to whom we made reference herein-

---

[4] Frankfurter, J., dissenting in *Johnson* v. *New York, N. H. & H. R. Co.,* 344 US 48, 62 (73 S Ct 125, 97 L ed 77).

[5] The principal fault here, according to counsel's affidavits, was that appellants' Milwaukee counsel understood that appellants' Detroit counsel would forward them all papers filed in the cause but, due to misunderstanding, this was not done.   We are told by affidavit: "That the address of the attorneys for said Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 486, and Neil Dalton, Jr., upon the Notice of Appearance was 2550 Guardian Building, Detroit, Michigan, and that the affiant understood that the Detroit office would forward all papers having to do with this case to the office in Milwaukee as soon as they were received in the Detroit office; that a misunderstanding in this regard occurred which was inadvertent and unintentional and which resulted in the fact that the papers above mentioned, to-wit: the motion to strike the answer, the order of the court that the answer be stricken unless an amended answer be filed, the notices of default for failure to file an amended answer and the notice of hearing were received in the Detroit office, but were not forwarded to the Milwaukee office, and that they did not come to the attention of affiant until after said decree was made and entered."

[6] 9 Holdsworth, History of English Law, p 427.

above) is discussing with Crogate[7] the system of special pleading:

"*Sur. B.:* Done away with special pleading? Heaven forbid! * * * We framed a series of rules on the subject, which have given a truly magnificent development to this admirable system; so much so, indeed, that nearly half the cases coming recently before the court, have been decided upon points of pleading.

"*Crogate:* You astonish me. But pray how do the suitors like this sort of justice?

"*Sur. B.:* Mr. Crogate, that consideration has never occurred to me, nor do I conceive that laws ought to be adopted to suit the tests and capacities of the ignorant."

In ancient times, when trials were mere combats between opposing counsel, he who best knew the intricacies of repleader and surrebuttal would prevail as a matter of course. Cases were disposed of in great numbers without taking the testimony of so much as a single witness. Justice was thus sacrificed on the altar of lifeless formalism. Today pleadings are construed, not as an impediment to justice but to further its accomplishment. Save in the clearest possible cases, of which this, assuredly, is not one, modern courts do not dispose of substantial issues on pleading points alone, but on proofs. Since it is enough that challenge to jurisdiction over the subject matter need merely be suggested on the record to impose upon a court the duty of conducting inquiry as to its jurisdiction to proceed, we need hardly add that inartistic or unskillful pleading thereof (even should such exist) will not serve to relieve the court of its duty.

The order of the chancellor denying the relief prayed by the appellants is reversed and the cause

---

[7] See *Crogate's Case,* 8 Co Rep 66b (77 Eng Rep 574).

remanded for proceedings not inconsistent with this opinion, and upon such terms and conditions as may seem equitable to the chancellor under the circumstances. Although appellants have prevailed in this Court, the appellee may have his costs.

Decree should be reversed and remanded.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.

CARR, J. (*concurring*). Plaintiff brought this suit in equity, seeking injunctive relief and damages based on alleged wrongful conduct on the part of defendants. The bill of complaint alleged that plaintiff was a contractor engaged in building houses in Saginaw county, that as such he had a number of employees, and that the defendants engaged in a conspiracy to interfere with plaintiff's business, and with his employees, for the attainment of an unlawful labor objective. The conduct of which plaintiff complained was set forth in detail in his pleading. The defendants filed their answers thereto, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 486, and defendant Dalton joining in a pleading that denied some of plaintiff's allegations, pleaded lack of information as to others, and asserted by way of affirmative defense that the exclusive jurisdiction with reference to the plaintiff's alleged cause of action was vested in the national labor relations board. The answers filed on behalf of other defendants are not material in the instant controversy.

On behalf of plaintiff a motion was submitted to strike the answer filed on behalf of Teamsters Union and Dalton, its local representative, on the ground that its averments were evasive and not in compliance with the requirements of Michigan Court Rules

Nos 17 and 23 (1945).* Plaintiff asked that the answer either be stricken or that said defendants be required to file an answer in accordance with the rules and practice of the court. Following a hearing on said motion the circuit judge entered an order re- quiring that an amended answer be filed within 15 days thereafter, and that in default thereof the an- swer as filed be stricken from the cause. No amended answer was filed and approximately 4 weeks after the order was entered counsel for plaintiff filed a motion and order for default of said defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 486, and Neil Dalton, Jr.

No attempt was made to have the default referred to set aside. Several months later the case was set for trial on October 21, 1958. Counsel representing the plaintiff, and also counsel representing defend- ants other than the Teamsters Union and Dalton, were present and announced themselves ready for trial. In a colloquy between the court and counsel appearing in the case reference was made to the fact that the 2 defendants named were not present or represented although notice of trial had been sent to them by the clerk of the court, as specifically re- quested by counsel for the plaintiff. It is not dis- puted that the notice was received, and it further ap- pears from the record before us that said defend- ants, the appellants in the case, were also notified by counsel representing another defendant that the case would be brought on for trial on October 21, 1958. It is not disputed that the following letter was written by general counsel for the Teamsters Union, who also represented defendant Dalton:

---

* See amendment to Court Rule No 17, § 9, in 335 Mich lxii.—RE- PORTER.

"October 16, 1958

"Mr. Gerry McIlvain
Teamsters Local 486
229 North Jefferson Street
Saginaw, Michigan
"*Dear Gerry:*

"We received notice from William L. Hellerman that the Haenlein case was set for trial on October 21, 1958. We understand that the teamsters have no interest in the Haenlein Company and do not desire to litigate the issues involved in that case. We suggest that your local attorney inform the court and the plaintiff's counsel of this fact with the view in mind of having the teamsters dismissed as a party by stipulation.

"Please advise if there is anything further we can do on this case.

"Yours very truly,
"PADWAY, GOLDBERG & PREVIANT,
By DAVID LEO UELMEN

"DLU*ED
"cc Mr. William L. Hellerman
Attorney at Law
Shearer Building
Bay City, Michigan"

The trial judge proceeded to hear testimony in the case, and concluded that the charges made in the bill of complaint had been sustained by the evidence. A decree was accordingly entered granting against the defendants an injunction as sought by plaintiff, and also providing as follows:

"It is further ordered, adjudged and decreed that the defendants, Teamsters, Chauffeurs, Warehousemen & Helpers of America, Union No. 486, American Federation of Labor, and Neil Dalton, jointly and severally pay to the plaintiff Andrew J. Haenlein, his damages sustained by reason of the illegal and unlawful primary and secondary boycott which the court finds and assesses at $20,000, and that plaintiff may have execution therefor."

On being advised of the entry of the decree the defendants against whom damages were assessed, as indicated in the provision above quoted, made a motion for a rehearing, to which motion counsel for plaintiff filed objections. The trial judge denied the application to set aside the decree and grant the rehearing sought, and said defendants, the Teamsters Union and Dalton, have appealed.

The decree entered in circuit court made no reference to the order of default entered by counsel for plaintiff against appellants. It did, however, recite that appellants had regularly appeared in the case, that they had received notice of the date and place of trial, and that neither said defendants, nor either of them, nor their counsel, had appeared in court. It thus appears that the circuit judge determined that under the circumstances he was justified in proceeding in accordance with the notice of trial, and in permitting the introduction of proofs offered on behalf of the parties to the case who were represented. It further appears that the decree was based on the proofs taken in open court. No claim is made that appellants sought, or desired, a continuance for any reason. It is a matter of inference only that they believed that plaintiff's alleged cause of action could not be maintained as against them. Whatever the reason for the failure to appear or to take possible action to bring about a postponement of the trial, the fact remains that defendants elected to take no further part in the proceeding. Under the admitted facts we think the trial judge did not abuse his authority in proceeding with the trial, or in denying appellants' motion to set aside the decree and grant a rehearing.

On behalf of appellants it is claimed that the trial court was without jurisdiction on the theory that the national labor relations board was vested with sole and exclusive authority in the premises. However,

the bill of complaint does not indicate that plaintiff was engaged in interstate commerce in connection with his building operations, and the statement in the answer filed to the effect that such business "affects interstate commerce within the meaning of the national labor relations act, 29 USCA, § 151 *et seq.*" was a mere conclusion unsupported by factual averments.   In any event appellants did not appear at the trial for the purpose of offering proof in support of their claim in such respect.

On the record before us the situation is analogous to that in *Way Baking Company* v. *Teamsters & Truck Drivers Local No. 164, American Federation of Labor,* 335 Mich 478.   In that case the claim of the defendant that the plaintiff was engaged in interstate commerce was an issue of fact in the trial court, was determined adversely to defendant, and this Court on appeal concluded that the record supported such finding.   It may not be assumed that plaintiff in the case at bar was engaged in interstate commerce, and appellants did not avail themselves of their right to offer proofs in support of their pleaded affirmative defense with reference thereto. The claim now made that the trial court lacked jurisdiction is without merit.   For the reasons indicated we concur in affirmance of the decree entered.

Every controversy of this nature must be determined in accordance with the facts involved.   Mr. Justice BLACK has referred in his opinion to *Moody* v. *Carnegie,* 356 Mich 434, in which this Court, on equal division, affirmed an order of the circuit court of Wayne county granting a rehearing in an equity case.   The fact there was that the plaintiff, an elderly widow, who was a necessary witness in her own behalf, was not given notice that her case had been set for trial at a certain time.   As a result she was not present when the case was called and the hearing proceeded without her.   Her attorney, who was in

court, apparently made no explanation to the trial judge nor did he seek a continuance, or the opportunity to advise plaintiff that her case was being heard. The result was a decree adverse to her. Subsequently she learned what had occurred, obtained other counsel, and filed a petition to set aside the decree and to grant a rehearing. This was after the time fixed by rule for making such a petition, other than on the basis of fraud. The circuit judge presiding at the hearing of the application concluded that in the interest of justice plaintiff should be granted her right to her day in court and ordered a rehearing. The result was a decree in plaintiff's favor. On appeal the action taken was approved as indicated, the facts disclosing that plaintiff had been improperly deprived of her right to appear and testify when the case was first called for hearing. Such deprivation amounted to fraud. The case now before us does not present a like situation. No claim is made that appellants were wrongfully deprived of their right to appear at the trial and present their proofs.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.